

222 Delaware Avenue • Suite 900  
P.O. Box 25130 • Wilmington, DE 19899  
Zip Code For Deliveries 19801

Writer's Direct Access:  
(302) 429-4232  
Email:  sbrauerman@bayardlaw.com

September 19, 2012

**BY CM/ECF & HAND DELIVERY**

The Honorable Christopher J. Burke  
United States District Court for the District of Delaware  
844 North King Street  
Wilmington, DE 19801

      Re:    *Suomen Colorize Oy v. Verizon Services Corp. et al.,* C.A. No. 12-715-CJB

Dear Judge Burke:

      Pursuant to the Court's Scheduling Order (D.I. No. 18) and its provisions regarding Disputes Relating to Protective Orders, Plaintiff respectfully submits this letter outlining the issues in dispute and its position on those issues. Counsel for the parties have met and conferred several times and resolved all disagreements regarding the draft Protective Order except one, which relates to the disclosure of source code.

      Paragraph 15 of the draft Protective Order, filed on September 13, 2012 (D.I. No. 24), governs access to and review of source code. Plaintiff's version of Paragraph 15(g), provides for the use of laptop computers for note-taking in review of source code. Defendants have insisted that all such note-taking, including copying small portions of source code and recording the expert's mental impressions, be performed with pen and paper.[1] Such restriction would seriously impede Plaintiff's review and analysis of source code and would do nothing to enhance the protections afforded Defendants' confidential information. Other restrictions in the draft Protective Order provide ample protection against any unauthorized disclosure or use of Defendants' code. Accordingly, Plaintiff respectfully requests that the Court adopt its version of Paragraph 15(g).

      Defendants' pen and paper limitation would make review and analysis of source code far more difficult, time consuming, and expensive than it will be if note-taking on a laptop is permitted. Plaintiff anticipates that Defendants will produce source code for a number of relevant program versions, each likely comprising thousands, perhaps tens or hundreds of

---

[1] Plaintiff initially proposed that the parties adopt the Default Standard for Access to Source Code, with minor changes to permit limited copying of source code and to make clear that note-taking is allowed. The parties have since agreed that Plaintiff may print up to 500 pages of source code (with no more than 25 consecutive); the parties have also agreed to note-taking that may include excerpts of source code (without circumventing the page limitation). The parties disagree, however, on the method of note-taking, with Defendants insisting that notes be taken by hand, and Plaintiff proposing that notes may be taken on a laptop.



thousands, of lines of code. All this code will require time-intensive review by a time-constrained expert, who will be paid by the hour. Further, while this case involves only one patent, each claim may require a different inquiry, each with an additional investment of time. While source code is technically "readable" and written in familiar letters and numbers, its text and language are extremely dense and cryptic, even to the experienced expert. The review of source code in this case could take days or weeks, perhaps spanning multiple visits. That already considerable expenditure of time will be substantially increased if the reviewing expert is compelled to take notes on paper and to copy any excerpts of source code by hand.

Although years ago the use of handwritten notes in reviewing source code might have been a viable option, computer programs have become increasingly expansive, complicated, and sophisticated; and the review and analysis of such large and complex programs requires extensive and detailed note-taking. Restricting the reviewing expert to handwritten notes would prevent him or her from employing techniques commonly used to perform a sound and thorough analysis.

Use of a laptop facilitates an expert's understanding of the code, helping the expert keep track of internal references, definitions, and iterations of sections of code, and enabling the expert to understand each functionality in the context of the entire code. Experts also use laptops to document how the source code works, for example, noting relevant source code functions by each function's name and potentially copying limited lines or smaller pieces of code specifically relevant to a particular claim. Permitting note-taking on a laptop allows an expert to track and organize his or her own source code review to ensure clear and accurate comprehension in an efficient manner, enabling the expert to form an opinion on whether a patent claim may be infringed.

Further, even experienced experts frequently must refer to other sources to understand certain pieces of unfamiliar code. For example, experts often rely on public information to unravel acronyms used in the code, to understand the use of certain software frameworks, or to review discussions of features and functionalities to aid in their understanding. The immediate access to such resources greatly accelerates review by allowing an expert to make determinations on the spot regarding relevance, as well as to understand how the code operates.

For all these reasons, use of a laptop for note-taking greatly increases the efficiency and thoroughness of the analysis, and permits the reviewing expert to memorialize the results of his or her review in more detail and with greater accuracy.

The benefits of electronic note-taking are not offset by any realistic concerns regarding the confidential treatment that will be afforded Defendants' code. Contrary to Defendants' position, its pen and paper requirement is simply not necessary to ensure that its code will be treated with an appropriately high degree of confidentiality and that it will not be used for any purpose outside the litigation. Electronic note-taking will not involve the wholesale copying of source code, and the Protective Order prevents any misuse or unauthorized disclosure of any source code excerpts. Under the draft Protective Order access to any source code will be restricted to outside counsel for Plaintiff and to designated expert(s), who will of course be bound by the rules and responsibilities in the Order. Notes on the code will not be shared with anyone other than the note-taking expert(s) and outside counsel. None of the individuals with access to the code (directly or via notes) will be permitted to use it for any purpose outside the litigation. Indeed, none would even be in any position to do so. No one with access to



Defendants' code has any competitive decision-making authority for Suomen Colorize Oy[2]; and Plaintiff's counsel has agreed to a Prosecution Bar that would preclude any individual who has viewed certain materials from being able to assist in the prosecution of patents in this field. Moreover, Plaintiff does not, and has no plans to, directly compete with Defendants in this or any other geographic market.  Thus, any concerns that Defendants' code could be used for competitive advantage are absent in this case.  Defendants' insistence on pen and paper note-taking is nothing more than an unjustified attempt to make it more difficult and expensive for Plaintiff to litigate the case.

In an attempt to allay Defendants' purported concerns about the security of the code, Plaintiff has offered numerous safeguards including requiring encryption and password protection, and restricting the number of contiguous lines of code that the notes could document. Plaintiff requested that Defendants propose additional controls that would allay their concerns. However, Defendants did not offer any further suggestions.

Plaintiff is willing to consider any further proposals and to adopt any proposals previously discussed with Defendants to limit the use of a laptop for source code note-taking in an appropriate and reasonable manner.  Plaintiff appreciates the Court's intervention in this dispute and looks forward to a fair and practical resolution.

Respectfully submitted,

/s/ Stephen B. Brauerman

Stephen B. Brauerman (sb4952)

---

[2] *See, e.g.*, *Affymetrix, Inc. v. Illumina, Inc.*, CIV.A. 04-901-JJF, 2005 WL 1801683 (D. Del. July 28, 2005) (allowing access to sensitive information to counsel without competitive decision-making authority, but not to counsel with competitive decision-making authority); *see also R.R. Donnelley & Sons Co. v. Quark, Inc.*, CIVA 06-032 JJF, 2007 WL 61885 (D. Del. Jan. 4, 2007) (allowing access to sensitive information to an individual who did not "report directly to any business person with direct responsibility for competitive decision-making").