**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SUOMEN COLORIZE OY, )<br>)<br>       Plaintiff, )<br>)<br>    v. )<br>)<br>VERIZON SERVICES CORP., VERIZON )<br>ONLINE LLC, and VERIZON DELAWARE )<br>LLC, )<br>)<br>       Defendants. )<br>) | C.A. No. 12-715-CJB<br><br>JURY TRIAL DEMANDED |

**NOTICE OF DEPOSITION OF SUOMEN COLORIZE OY
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Verizon Services Corp., Verizon Online LLC, and Verizon Delaware LLC (collectively, "Verizon"), through their undersigned counsel, will take the deposition by oral examination of Plaintiff Suomen Colorize Oy ("SCO") on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons designated by SCO to testify on its behalf.

Verizon requests that SCO provide written notice, at least five business days in advance of the deposition of: (1) the name(s) of each designee who has consented to testify on behalf of SCO, (2) the job title of each such person, and (3) the topic(s) set forth in Schedule A on which each such person will testify.

The deposition will commence on April 16, 2013 at 9:00 a.m. and will take place at the offices of Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY 10019, or at such other time and place as may be agreed by counsel. The deposition will be taken before

an officer authorized by the laws of the United States to administer oaths and will be recorded by video and/or stenographic means.  The deposition will continue from day to day until completed, weekends and holidays excepted, with adjournments as to time and place as may be necessary.  Some or all of the deposition testimony may involve real-time computer connection between the deposition taker and court reporter using software such as "LiveNote."

|  |  |
|---|---|
|  | SEITZ ROSS ARONSTAM & MORITZ LLP |
| *Of Counsel*: | /s/ Benjamin J. Schladweiler |
|  | Collins J. Seitz, Jr. (DE Bar No. 2237) |
| John L. North | Benjamin J. Schladweiler (DE Bar No. 4601) |
| Darcy L. Jones | 100 S. West Street, Suite 400 |
| KASOWITZ, BENSON, TORRES | Wilmington, DE  19801 |
|  & FRIEDMAN LLP | (302) 576-1600 |
| Two Midtown Plaza, Suite 1500 | cseitz@seitzross.com |
| 1349 West Peachtree Street, N.W. | bschladweiler@seitzross.com |
| Atlanta, GA  30309 |  |
|  | *Attorneys for Defendants Verizon Services* |
| Norman E.B. Minnear | *Corp., Verizon Online LLC, and Verizon* |
| KASOWITZ, BENSON, TORRES | *Delaware LLC* |
|  & FRIEDMAN LLP |  |
| 1633 Broadway |  |
| New York, NY  10019 |  |

Dated:  March 18, 2013

## **CERTIFICATE OF SERVICE**

I, Benjamin J. Schladweiler, hereby certify that on March 18, 2013, I caused *Notice of Deposition of Suomen Colorize Oy Pursuant to Federal Rule of Civil Procedure 30(b)(6)* to be served to the following individuals in the manner indicated:

| **VIA ELECTRONIC MAIL** | **VIA ELECTRONIC MAIL** |
|---|---|
| Richard D. Kirk | Karen H. Bromberg |
| Stephen B. Brauerman | Francisco A. Villegas |
| Vanessa R. Tiradentes | Damir Cefo |
| BAYARD, P.A. | Joyce E. Kung |
| 222 Delaware Avenue | COHEN & GRESSER LLP |
| Suite 900 | 800 Third Avenue |
| Wilmington, DE 19801 | New York, NY 10022 |
| (302) 655-5000 | (212) 957-7600 |
| rkirk@bayardlaw.com | kbromberg@cohengresser.com |
| sbrauerman@bayardlaw.com | fvillegas@cohengresser.com |
| vtiradentes@bayardlaw.com | dcefo@cohengresser.com |
|  | jkung@cohengresser.com |
| *Attorneys for Plaintiff Suomen Colorize Oy* | *Attorneys for Plaintiff Suomen Colorize Oy* |

　

　 */s/ Benjamin J. Schladweiler*
　Benjamin J. Schladweiler (Bar No. 4601)

# SCHEDULE A

# DEFINITIONS

As used herein and in all further requests for production, unless specified otherwise, the following definitions apply:

A.  "SCO," "Plaintiff," "You," and "Your" shall mean Suomen Colorize Oy and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

B.  "Patent-in-Suit" or "Asserted Patent" or the "'398 patent" refers to U.S. Patent No. 7,277,398.

C.  "Defendant," "Defendants," or "Verizon" refers to one or more of the named defendants in this action.

D.  "Foreign Counterpart Application" means any patent application filed anywhere in the world outside the United States (a) that claims priority in whole or in part from an application that resulted in a given patent; (b) that is the basis for the claim of priority in whole or part (including without limitation claims of benefits under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (c) that discloses the same subject matter as a given patent.

E.  "Related Patents or Patent Applications" means all patents and patent applications relating to the Patent-in-Suit, including any provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Patent-in-Suit, or claiming the benefit of the

filing date of any application whose benefit is claimed in the Patent-in-Suit, whether or not abandoned and whether or not issued.

F. References to this "lawsuit," this "litigation," this "action," or this "case" means the above-captioned action brought by SCO.

G. "DISH Litigation" means the actions styled as *Suomen Colorize Oy v. DISH Network LLC et al.*, C.A. Nos. 8:10-cv-2406 (M.D. Fla.), 1:11-cv-1815 (D. Colo.).

H. "Infringement," "infringing," "infringe," and "infringed" shall mean direct infringement, contributory infringement, induced infringement, literal infringement, and/or infringement under the doctrine of equivalents.

I. "Asserted Claims" refers to any claim(s) of the Patent-In-Suit that You assert, in this action, have been infringed by any Defendant.

J. "Named Inventor" refers to Risto Mäkipää, the individual named on the face of the '398 patent.

K. "Domiras Oy" means Domiras Oy and all related entities, predecessors, successors, subsidiaries, divisions, and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

L. "Prior Art" is used in these Topics in the same sense that it is used in 35 U.S.C. §§ 102 or 103, including without limitation, any patent, printed publication, prior knowledge, prior use, prior sale, or offer for sale or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

M. "Person" and "Individual" are defined as any natural person or any business, legal or government entity or association.

N. "Third party" means and includes any person or persons other than Verizon and SCO.

O. "Accused Products" means any systems, products and/or services made, used, sold, or offered for sale by any Defendant that You contend infringes any claim of the Asserted Patent. In referring to any product as an "Accused Product," Verizon in no way communicates its agreement that any Accused Product infringes any claim of the Asserted Patent or is rightfully the subject of suit in this matter.

P. "Relevant Products" means any product or service relating to the Patent-in-Suit and Related Patents or Patent Applications, including but not limited to any process, procedure, system, and/or method relating to electronic program guides generally and/or providing services and data regarding available service selections using a terminal and one or more telecommunications networks, wherein the selection data of a service is formed by using identification and control data of the services that is located in multiplexed frames used for transmitting the services.

Q. "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). By way of illustration and without limitation, documents include at least the following: originals, drafts and all nonidentical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products.

R. The term "Identity" and shall mean, as the context shall make appropriate:

(a) With respect to a person, the name, present or last known address, telephone number, occupation and employer;

(b) With respect to a corporation, partnership, association or other entity, its full name, form of organization, and its present or last known address and telephone number; and

S. "Communicate" or "communication" means every manner or means of disclosure, transfer, transmission or exchange of information whether person-to-person, in a group, by telephone, by letter, facsimile, electronic or computer mail, voicemail, telex or telecopy, or by any other process, electric, electronic, or otherwise.

T. "Concern," "concerning," "relate," "related" or "relating" shall mean referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a Topic.

U. The term "role" means the level of involvement of a person in an activity, the tasks performed by a person in an activity, whether a person was the primary person in charge of an activity, and whether a person had a supervisory or day-to-day responsibility for an activity.

V. The terms "and" and "or" whenever used herein shall be understood in both the conjunctive and disjunctive sense, synonymous with "and/or."

W. Any noun used in the singular form shall be construed and applied so as to also include the plural form, and vice versa.

## DEPOSITION TOPICS

1. SCO's ownership of and/or interest in the Patent-in-Suit, including but not limited to the complete chain of title from the Named Inventor to SCO, all assignments and/or licenses

of the Patent-in-Suit granted to or by SCO, and the decision to grant or obtain any license or sublicense to patents relating to the subject matter claimed by the Patent-in-Suit, including all executed licenses and sublicenses covering the Patent-in-Suit.

2. The identity of all documents, materials, physical items, information, and data that You: (a) acquired in the same or a related transaction and/or at the same time and/or in association with Your acquisition of the Patent-in-Suit and (b) have not been produced to Verizon by You in this litigation.

3. The reason(s) You have not produced any other documents, materials, physical items, information, or data that You acquired in the same or a related transaction and/or at the same time and/or in association with Your acquisition of the Patent-in-Suit.

4. The prosecution (including the preparation and filing) of the applications leading to the Patent-in-Suit or any Related Patents or Patent Applications.

5. The prosecution (including the preparation and filing) of any Foreign Counterpart Applications corresponding to the application leading to the Patent-in-Suit or any Related Patents or Patent Applications.

6. The identity and role of each attorney (whether outside or in-house counsel) involved in the prosecution of the application that led to the Patent-in-Suit or any Related Patents or Patent Applications.

7. The identity and role of each person who was and/or is involved in the research, development, marketing, offering for sale, or sale by You, the Named Inventor, anyone working with the Named Inventor, or Domiras Oy relating to the Patent-in-Suit or Related Patents or Related Applications, or any Relevant Products.

8. The preparation of all invention disclosure(s) concerning the subject matter claimed in the Patent-in-Suit.

9. The conception, design, development, and/or reduction to practice of any invention claimed in the Patent-in-Suit.

10. The date(s) and circumstances of the conception and reduction to practice of the subject matter claimed in the Patent-in-Suit, any diligence in the reduction to practice thereof, and an identification of all evidence that corroborates the date(s) of such conception and reduction to practice or corroborates any diligence.

11. All source code, schematics, circuit diagrams, architecture diagrams, server files, networking guides, process flows, data sheets, specifications, designs, manuals, user guides, and other documents concerning the design or operation of the technology claimed in the Patent-in-Suit.

12. The first manufacture, first use, first sale and/or first offer for sale in the United States and the first publication anywhere of any products, services, or methods that you contend are within the scope of the claims of the Patent-in-Suit.

13. SCO's awareness of interactive or electronic programming guides prior to the filing of the application for the Patent-in-Suit.

14. Any attempt to commercialize, sell or explore the market for any alleged invention claimed in the Patent-in-Suit, prior to the application for the patent thereof, including, without limitation, demonstrations, testing (including, but not limited to, beta testing), bug reports, correspondence, sales reports, sales forecasts, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training

materials, quotes, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

15. Any study, investigation or other inquiry by SCO or anyone on behalf of SCO or obtained from anyone else, whether orally or in writing, concerning the validity, enforceability, scope or infringement of the Patent-in-Suit, or of any Foreign Counterparts thereof, including, but not limited to, any patents, printed publications, products and other factual information discovered and/or considered during such study, investigation, or other inquiry and any and all Prior Art searches and investigations.

16. Any and all due diligence searches, studies, evaluations, or opinions concerning the Patent-in-Suit and any Related Patents or Patent Applications, or any Foreign Counterpart Applications, and/or any subject matter disclosed or claimed therein.

17. The identification of all products or services upon which SCO intends to rely upon to demonstrate commercial success of the invention claimed in the Patent-in-Suit, and all facts and circumstances that evidence, support, or contradict their commercial success, including all documents and communications relating thereto.

18. All Prior Art to the Patent-in-Suit or any Related Patents or Patent Applications, or any Foreign Counterpart Applications known by or identified to SCO.

19. Each and every search known by or conduct by, for, or on behalf of SCO on all, or any part, of the subject matter of the Patent-in-Suit, and all Prior Art, publications, or other materials identified or discovered in connection therewith, including without limitation documents and things concerning the date on which SCO first became aware of the Prior Art, publications or materials.

20. Any Accused Product, the use of which SCO claims infringes the Patent-in-Suit.

21. SCO's awareness and/or investigation of any Accused Product prior to the filing of this lawsuit.

22. The activities of any third party making, using or selling of all products, services, and methods that you contend are within the scope of the claims of the Patent-in-Suit in any form in the United States or any country, and all analyses performed by You or on Your behalf relating thereto.

23. Any agreement where SCO is a party to the agreement, including any non-disclosure agreements, or agreements to share information, concerning the present litigation, the Patent-in-Suit or technical information concerning any Relevant Products.

24. Any consideration ever paid, agreed upon, offered, demanded or received for any use of or rights or interest in the Patent-In-Suit or for alleged infringement of the Patent-in-Suit, including the settlement of disputes or litigation, licenses, potential licenses, royalties, potential royalty rates or royalty bases, alleged damages, enforcement, or assignment of the Patent-in-Suit.

25. Forecasts or projections of sales, revenues, costs, and profits for the licensing and/or enforcement of the Patent-in-Suit.

26. The identity of all licensees or prospective licensees to whom You have presented, demonstrated, offered to sell, sold, leased, or licensed the Patent-in-Suit or offered to do the same, and any and all reasons expressed by any licensee or prospective licensee as to why they entered or declined to enter into a license agreement for the Patent-in-Suit.

27. Your policies, practices, procedures, guidelines, or instructions related to the acquisition or licensing of intellectual property, including licenses to be granted by You or patents to be acquired by You.

28. License agreements and royalty rates for licenses on patents comparable or related to the technology claimed in the Patent-in-Suit.

29. The value SCO or anyone else has assigned or ascribed to the Patent-in-Suit or any claim for infringement of the Patent-in-Suit.

30. The market or demand for products, methods, or services that allegedly are covered by the claims of the Patent-in-Suit, including without limitation market surveys, market analyses, and forecasts, or projections of production levels or customer demand for such products, methods, or services.

31. Investigations, analyses, and comparison performed by You, the Named Inventor, or any other third party at Your direction, prior to the filing of this lawsuit, to determine if any product or service made, used, offered for sale, sold, and/or operated by any Defendant (or use thereof) infringes the Patent-in-Suit.

32. Any proposed, offered, contemplated or actual license, sale, covenant, settlement, negotiation, discussion, offer, agreement, transfer, or assignment of any rights or interest concerning the Patent-in-Suit, whether or not consummated.

33. All efforts to exploit, commercialize, license, sell or enforce the Patent-in-Suit, any interest therein, or any invention claimed therein from the filing date of the Patent-in-Suit to the present.

34. The identity of all person(s) and entity(ies) with a pecuniary interest in the outcome of this case, the nature and amount of each such pecuniary interest and the expected allocation of any proceeds from this lawsuit.

35. Communications between SCO and Verizon prior to the filing of this lawsuit.

36. Communications between SCO and any non-party to this lawsuit, including but not limited to any non-party in the DISH Litigation, regarding any aspect of the Patent-in-Suit, any related patent or application, or any alleged infringement thereof.

37. SCO's investigation and efforts to collect and produce documents in response to Defendants' requests for production of documents in this action, including but not limited to the identity of all individuals and entities from which You have searched for and collected documents, and the custodians of such documents.

38. SCO's policies and procedures related to the retention of documents.

39. SCO's investigation and efforts in responding to Defendants' Interrogatories to SCO.