# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
————————————————————— x
                      :
SUOMEN COLORIZE OY,   :
                      :
            Plaintiff,:
                      :
        v.            :   C.A. No. 12-715-CJB
                      :
VERIZON SERVICES CORP.,:
VERIZON ONLINE LLC, AND:
VERIZON DELAWARE LLC, :
                      :
            Defendants.:
                      :
————————————————————— x
```

## PLAINTIFF'S CLAIM CONSTRUCTION ANSWERING BRIEF

Dated: June 24, 2013

OF COUNSEL:

Karen H. Bromberg
Francisco A. Villegas
Damir Cefo
Maria Granovsky
Christopher M.P. Jackson
Joyce E. Kung
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5938)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19801
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
(302) 655-5000

*Attorneys for Suomen Colorize Oy*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................... 1

II. CLAIM CONSTRUCTION ...................................................................................................... 1

    A. "Forming . . . on the Basis" .................................................................................. 1

        1. Verizon Inappropriately Adds A New "Separating" Step ......................... 1

        2. The '398 Patent Only Requires *Use* Of Identification And Control Data ........................................................................................................... 3

    B. Selection Data ....................................................................................................... 6

    C. Identification And Control Data ........................................................................... 7

        1. No Restriction On Location ...................................................................... 7

        2. Identification And Control Data Not Required In Each Frame ................ 9

        3. Identification Data Is Not Selection Data ................................................. 9

    D. Frame .................................................................................................................. 10

V. CONCLUSION ....................................................................................................................... 11

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
 239 F.3d 1343 (Fed. Cir. 2001) ............................................................................................ 9, 10

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
 388 F.3d 858 (Fed. Cir. 2004) ............................................................................................ 1, 2, 3

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*,
 224 F.3d 1308 (Fed. Cir. 2000) .................................................................................................. 5

*Comark Commc'ns, Inc. v. Harris Corp.*,
 156 F.3d 1182 (Fed. Cir. 1998) .................................................................................................. 5

*Edwards Lifesciences LLC v. Cook, Inc.*,
 582 F.3d 1322, 1329 (Fed. Cir. 2009) ........................................................................................ 7

*E-Pass Techs., Inc. v. 3Com Corp.*,
 343 F.3d 1364 (Fed. Cir. 2003) .................................................................................................. 2

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
 256 F.3d 1323 (Fed. Cir. 2001). ................................................................................................. 6

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
 327 F.3d 1364 (Fed. Cir. 2003) .................................................................................................. 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004) ............................................................................................ 2, 3, 5

*Liposome Co. v. Vestar, Inc.*,
 36 U.S.P.Q.2d (BNA) 1295 (D. Del. 1994) ............................................................................... 4

*MEMS Tech. Berhad v. Int'l Trade Comm'n.*,
 447 F. App'x 142 (Fed. Cir. 2011) ............................................................................................. 3

*Netcraft Corp. v. eBay, Inc.*,
 549 F.3d 1394 (Fed. Cir. 2008) .................................................................................................. 3

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
 326 F.3d 1255 (Fed. Cir. 2003) .................................................................................................. 2

**Other Authorities**

Merriam-Webster's Collegiate Dictionary, p. 1301 (10th ed. 1996) ............................................. 4

## I. INTRODUCTION

Plaintiff Suomen Colorize Oy ("SCO") submits this brief in response to Verizon Services Corp., Verizon Online LLC, and Verizon Delaware LLC's ("Verizon's") Opening Claim Construction Brief (D.I. 99) ("VZ Op. Br.").

## II. CLAIM CONSTRUCTION

### A.   "Forming . . . On The Basis"

The parties agree that identification and control data is used to form selection data. The claim construction dispute concerns the means of that use. SCO asserts that selection data in the context of the asserted claims can be formed, in part, from identification and control data; and that the claim places no limits on how the identification and control data is used in the forming step. In contrast, Verizon proposes that forming requires the direct and exclusive separation of identification and control data from the service multiplex to create selection data. (VZ Op. Br. at 7-13.)

#### 1.   Verizon Inappropriately Adds A New "Separating" Step

Verizon's proposed construction imports the additional claim step of "[s]eparating the identification and control data located in the service multiplex from the multiplexed frame." (*See* VZ Op. Br. at 8.) This is improper because *first*, the plain text of the asserted claims does not require "separating"; *second*, Verizon improperly reads into the asserted claims a more restrictive embodiment from the written description; and *third*, Verizon misapplies *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864-85 (Fed. Cir. 2004).

Claim 1 requires "forming selection data for the selection of the service data on the basis of the identification and control data located in the service multiplex." (Amended Joint Claim Construction Chart ("AJCCC") (D.I. 98), Ex. 1, '398 Patent, at SCO00000007.) No "separating" is required or even implied. However, Verizon takes what is otherwise plain and clear patent text and obfuscates the meaning of "forming" to require a "separating" step.

To further its argument, Verizon improperly reads into the patent claim an element from an illustrative embodiment in the written description. Verizon highlights a single narrow embodiment that *could* be encompassed in asserted Claim 1, but is more applicable to non-asserted claims, such as Claim 5 (which requires a separate service directory compiled *from* the identification and control data of several multiplexed frames"). (*See* VZ Op. Br. at 8.) This attempt to restrict the otherwise broad scope of Claim 1 is prohibited because "[a] basic claim construction canon is that one may not read a limitation into a claim from the written description." *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003) (internal citations omitted).

Verizon attempts to support its position by citing *Bard*, presumably for the proposition that preferred embodiments can provide a useful interpretive guide for claim constructions. 388 F.3d at 864-85; (VZ Op. Br. at 8.) However, even *Bard* acknowledges that preferred embodiments are not dispositive of claim constructions. 388 F.3d at 865. In *Bard*, the preferred embodiment of "pleating" was read into the claims at issue for several reasons, including that "pleating" was implicated in *each* of the responses to the examiner's rejections (*id.* at 867), consistently throughout the entire specification (*id.* at 860), and in *each* instance in the specification in which the invention was *globally* described (*id.* at 863-64).

In the present case, however, "separating" is not implicated throughout the intrinsic record. Rather, the present situation is more similar to that of *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004). *Liebel* recognizes the complexity of applying sometimes competing claim construction canons. *Id.* at 905 (stating, "'The problem is to interpret claims "in view of the specification" without unnecessarily importing limitations from the specification into the claims.'" (*quoting E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003)). The Federal Circuit explained, "That problem can present particular difficulties in a case such as this one, in which the written description of the invention is narrow, but the claim language is *sufficiently broad*

that it can be read to encompass features not described in the written description, either by general characterization or by example in any of the illustrative embodiments." *Id.* (emphasis added). This appears to be applicable to the case at bar. Further, similar to *Liebel*, the specification contains no language indicating that all embodiments must contain this limitation, nor does it contain language clearly disavowing embodiments lacking this limitation. *Id.* at 908-909 ("[a]bsent a clear disclaimer of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context").

Verizon also relies on *Bard* and *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394 (Fed. Cir. 2008), for the proposition that the "separating" limitation applies because "[s]tatements found in sections of the patent such as the 'Summary of Invention' are more likely to describe the entire invention." However, the Federal Circuit has criticized such readings, especially where limitations are not consistently applied throughout a relevant record. In *MEMS Technology Berhad v. International Trade Commission*, the Federal Circuit explained that a party "misread[] *C.R. Bard* in arguing that claim 1 must be limited to a scope commensurate with the abstract or summary sections of the specification. . . . [I]n general, the general language in the abstract and summary sections does not represent the full scope of the embodiments in the specification." 447 F. App'x 142, 151 (Fed. Cir. 2011). Thus, the limitation of "separating . . . from" should not apply to the asserted claims.

### 2. The Asserted Claims Only Require *Use* Of Identification And Control Data

SCO does not dispute that the identification and control data is *used* for forming selection data. (*See* VZ Op. Br. at 8-11.) However, SCO disagrees with Verizon's characterization that *use* of identification and control data for forming selection data "mean[s] that the identification and control data is directly and physically accessed from the multiplex to create selection data. . . ." (*Id.*

3

at 13.)[1]  Verizon also appears to argue that *use* of identification and control data for forming selection data requires that selection data be created purely from identification and control data. (*Id.* at 10-12.)  SCO disagrees.

In fact, nothing in the asserted claims requires that selection data be formed purely and directly from identification and control data physically extracted from the service multiplex.[2]  Selection data can be established in part from at least a portion of the identification and control data. In other words, some identification and control data is *used*, or "put into . . . service," in forming selection data.[3]  The foreign prosecution history illustrates that only a subset (as opposed to the entirety) of the identification and control data is needed to form selection data:[4]

> Regarding the objection that it is not clear how the selection data is actually formed and how an association with identification and control data is performed at the terminal, the attached claims 1 and 11 are amended to recite . . . said program selection data containing at least part of said identification and control data also located in the service multiplex. . . .

While this foreign prosecution history pertaining to Claim 1 of the PCT application (which possesses the same forming language as Claim 1 of the '398 Patent) is extrinsic evidence, it provides valuable insight.  For example, statements made during foreign prosecution can represent how one of ordinary skill in the art would read the words of the patent and can be relevant to how a term was understood before the patent entered into litigation.  *Liposome Co. v. Vestar, Inc.*, 36 U.S.P.Q.2d (BNA) 1295, 1313 (D. Del. 1994).

---

[1] Verizon's emphasis on the addition of Claim 1 in 2003 is misplaced. (*See* VZ Op. Br. at 10.) Neither the original specification nor examiner communications required that selection data be formed purely and directly from identification and control data physically in the service multiplex.
[2] The applicant has distinguished prior art on this basis. (*See* SCO Op. Br. at 18-19.)
[3] *See* Merriam-Webster's Collegiate Dictionary, p. 1301 (10th ed. 1996) ("use" defined as "2: to put into action or service: avail oneself of: employ").  Verizon's interpretation of "use" appears more consistent with definition "5," or "to expend or consume by putting to use—often used with up." (Villegas Decl. ¶ 2, Ex. A, at SCO00009274.)
[4] Response to summons to attend oral proceedings, Pat. App. No. 98935057.4-2223 in the EPO, at 2, 4, 7 (Sept. 11, 2007).  (*See* Villegas Decl. ¶ 3, Ex. B at SCO00005848, 5850, 5853.)

Further, selection data can contain information beyond what is present in the identification and control data. For example, the patent describes the formation of selection data[5] as "comprising" the information located in the identification and control part of the frame. (AJCCC, Ex. 1, '398 Patent, at 4:10-15.) Because "comprising" is understood in patent law as open-ended,[6] selection data would include at least some of the identification and control data, but could also include additional information.

Moreover, Verizon ignores the plain language of the asserted and non-asserted claims that, as in *Liebel*, triggers the doctrine of claim differentiation. 358 F.3d at 910. In its proposed definition, Verizon inappropriately conflates the terms "on the basis" with "formed from" and "automatically generated." (*See, e.g.*, VZ Op. Br. at 8, 9, 12 (relying on passages from the intrinsic record using terms "formed from" and "automatically generated," which are applicable to non-asserted claims in which those terms appear).) "On the basis," as SCO proposes, should be read as "established in part from" and is distinguishable from other claim terms such as "formed from," "derived from," "automatically generated," and "forming automatically." These other terms appear in non-asserted claims 13 and 15 ("formed from"), 18 and 20 ("derived from," "automatically generated"), and 10 ("forming automatically")[7], and should be read to have separate and distinguishable meanings. *See, e.g.*, *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of evidence to the contrary, we must presume that the

---

[5] Described "in other words [as] advantageously a file form service directory". (AJCCC, Ex. 1, '398 Patent at 4:9-11.)
[6] "Comprising" should be interpreted as being open-ended and allowing for additional elements. *See, e.g.*, *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003).
[7] Unasserted Claim 10 (which includes the term "forming automatically") is dependent from asserted Claim 1 (which includes the term "on the basis"). Requiring that "on the basis" mean "forming automatically" would render Claim 10 superfluous. *See, e.g.*, *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) (explaining that two claims in the same patent will not have the identical scope, but instead, that there is likely an intended difference in scope). Thus, "on the basis" can include at one extreme, manual formation, and on the other, automatic formation. (*See, e.g.*, Dep. of Janne Jokela, Rough Tr. at 83:7-85:6 (June 7, 2013) (*see* Villegas Decl. ¶ 4, Ex. C).)

use of these different terms in the claims connotes different meanings."). Because Verizon has presented no evidence to rebut this presumption, "on the basis" should be construed to have a separate meaning from these other terms. If the applicant had intended to use "on the basis" to mean "formed from," "derived from," "automatically generated," or "forming automatically," he would have done so.

### B. Selection Data

Verizon's proposed construction of "selection data" requires that the selection data be displayed to the user and that such data is limited to an interactive program guide. (VZ Op. Br. at 13-15.) SCO disagrees.

*First*, Claim 1 does not require the display of selection data. Instead, the claim recites that the selection data is transmitted to the customer terminal *for* displaying the selection data. The patentee could have written Claim 1 to require "displaying" but did not. Instead, the patentee wrote independent Claim 13 which explicitly recites in pertinent part, "*displaying* the selection data of the service, which selection data is formed from the identification and control data." (AJCCC, Ex. 1, '398 Patent, at SCO00000008 (emphasis added).) Claim construction "begin[s] and remain[s] centered on the language of the claims themselves, for it is that language that the patentee chose to use." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Thus, the most important source of claim construction evidence—the patent claims themselves—demonstrate that the '398 Patent was drafted in a way that required some claims to display selection data, while others (such as Claim 1), do not.[8]

---

[8] While selection data may be displayed to the user (*see, e.g.*, VZ Op. Br. at 13-14), the intrinsic record does not mandate that *all* data contained within the selection data be displayed to the user and thus does not contradict or modify the plain meaning of the term. (*See* SCO Op. Br. at 17; *see also* Deposition of Risto Mäkipää, Tr. at 73:5-22 (June 3, 2013) (explaining that selection data does not need to be displayed in its entirety. *See* Villegas Decl. ¶ 5, Ex. D).)

*Second*, the prosecution history does not establish that selection data is interchangeable with selection menu, IPG or EPG. In every instance of alleged term interchangeability identified by Verizon (VZ Op. Br. at 14-15), the patentee was merely tracking the examiner's language or prior art raised by the examiner.[9] For example, when the examiner equated prior art "IPG," "EPG," or "program guide data" to the term "selection data" or "service directory," the patentee merely responded by using the same language.[10] Similarly, the patentee used language from a prior art reference raised by the examiner—that is, "selection menu" (along with the EPG)—as an example of the type of information contained in "selection data."[11]

### C.   Identification And Control Data

Verizon argues that (1) the location of the identification and control data is located in the first part of a multiplexed frame (as opposed to "multiplexed frames," signifying that identification and control data must appear in *each* frame); (2) both identification and control data are required in each frame; and (3) identification data is service selection data, while control data indicates the location and configuration of the service. (VZ Op. Br. at 16-17.) SCO disagrees.

### 1.   No Restriction On Location

Asserted independent Claim 1 only requires that identification and control data be located in the service multiplex, or more particularly "in at least one part of the multiplexed frames." (AJCCC,

---

[9] *Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) is inapplicable. (*See* VZ Op. Br. 14.) In *Edwards*, "intraluminal graft" and "graft" were used of the patentee's own volition interchangeably and consistently throughout the specification.

[10] *See* JA, Oct. 26, 2006 Office Action, SCO0000060, and Mar. 27, 2006 Office Action, SCO00000163-165 (equating "electronic program guide (EPG) data" to "selection data" in discussing Shiga) to which applicant responds with parallel language in SCO00000045 and SCO00000080 (cited at VZ Op. Br. at 15); *see also*, *e.g.*, JA, Aug. 12, 2003 Office Action, SCO00000274-277 (equating "IPG" with "service directory" . . . "comprising the selection data" in discussing Coleman) to which applicant responds with parallel language in SCO00000185, SCO00000262-263 (cited at VZ Op. Br. at 14).

[11] "Selection menu," as used by Verizon (*see* VZ Op. Br. at 14-15), is discussed in prior art reference "Iwafume" [*sic*], raised by the examiner in several office actions. (*See*, *e.g.*, JA, Feb. 27, 2003 Office Action, SCO0000295 *et seq.*; EP0756423A1, SCO00000318 *et seq.*)

7

Ex. 1, '398 Patent, at SCO00000007.) That is, the identification and control data must be present within the totality of the multiplexed frames.

Contrary to the language of Claim 1, Verizon improperly restricts the identification and control data to be located in the "first part of the multiplexed frame" (*i.e.*, in the *first* part of *each* frame). Verizon's alleged support is patent Figure 1. (VZ Op. Br. at 17.) However, the '398 Patent describes Figure 1 as "a schematic view of a *typical* multiplexed frame with its services,"[12] meaning that Figure 1 merely represents an outline of an exemplary multiplexed frame. Neither the cited passage, nor the rest of the intrinsic record, mandates (a) that *each* frame contain the identification and control data; and (b) that such data be in the *first part* of every frame.

Additionally, one skilled in the art would read the claims and specification in the context of standards governing digital television data requirements, such as the incorporated DVB Standard. Doing so would make plain that identification and control data need not be in the first part of each frame. For example, a digital television stream contains a number of PSI tables, such as the Program Association Table ("PAT") which identifies the locations of, among other things, other metadata tables within the digital video stream, and the Program Map Table ("PMT"), which provides the location of the audio and video associated with each service. These tables do not appear in every frame, nor do they even appear in the first portion of any frame. Instead, one skilled in the art would recognize that certain control and identification tables are repeated at short intervals. (*Id.* at SCO00000097.)[13] For that reason, identification and control data (such as the PAT and PMT) are interspersed throughout the service multiplex, with no requirement that a single frame contain this exemplary identification and control data.

---

[12] *See* AJCCC, Ex. 1, '398 Patent, at 3:39-40 (emphasis added).
[13] More specifically, these tables should be repeated at least every 100 milliseconds. ETSI, Digital Video Broadcasting (DVB), ETR 154 (Oct. 1996), at SCO00006575 (Villegas Decl. ¶ 6, Ex. E).

### 2. Identification And Control Data Not Required In Each Frame

Verizon suggests that both "control data" and "identification data" must be present in each frame. (VZ Op. Br. at 16-17.) SCO disagrees. As explained above, the asserted claims only require that the identification and control data be present within a service multiplex, and more particularly in at least one part of the totality of multiplexed frames. Such identification and control data may appear in some of the multiplexed frames, but need not appear in every one of them.

Verizon also suggests that "control data" and "identification data" are distinct items. (VZ Op. Br. at 16-17.) Again, SCO disagrees. When describing Figure 1, the specification defines "identification and control" data as a single data type comprising: "information regarding the form in which each service is connected with the multiplexed frame." (AJCCC, Ex. 1, '398 Patent, 3:58-63.) As the plain meaning of the term suggests, it is broad and *singular* in scope. It covers, for example, control data (such as PSI data), identification data (such as PSIP data), or both. Verizon agrees. Its invalidity contentions equate "identification and control data" with the collectively labeled "associated data" that accompanies video and audio data. (*See Verizon Defendants' Supplemental Invalidity Contentions Pursuant to Paragraph 4(d) of the Default Standard* ("Invalidity Contentions"), at 31-34. Villegas Decl. ¶ 7, Ex. F (suggesting "an associated data payload that specifies interactive video command and control functions for the computer system" as a proxy for "identification and control data").) Verizon cannot advance one claim construction for non-infringement purposes, and another for invalidity. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[C]laims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

### 3. Identification Data Is Not Selection Data

Verizon alleges that the DVB Standard suggests identification data is "selection data." (VZ Op. Br. at 18-19.) Verizon is wrong.

9

The DVB Standard describes well known data structures for digital television streams, such as Service Description Tables (SDTs), which contain "data describing the services in the system, e.g. names of services, the service provider, etc."; Event Information Tables (EITs), which contain, *inter alia*, "data concerning event name, start time, duration, etc."; and Time and Date Tables (TDTs), which contain "information relating to the present time and date." (*Id.*; JA, SCO00000093.) These tables reside in the service multiplex and can contain EPG data. (JA, SCO00000093.) Separating or extracting EPG data from such tables to create selection data purely and directly from the multiplexed stream would have been known in the art—something the applicant knew in incorporating the DVB Standard, and something the examiner knew in granting the patent. (*See* SCO Op. Br. at 19.) Verizon's construction, however, implies that simply because SDTs, EITs, and TDTs carry EPG data, these tables are what the applicant contemplated to be "selection data." (*See* VZ Op. Br. at 18-19.) This construction is convenient for Verizon because the use of SDTs, EITs, and TDTs for creating EPGs was well known in the prior art. However, this is not what the applicant contemplated, what the intrinsic record suggests, or what the asserted claims state.

The DVB Standard provides examples of the types of data that, separately or as a whole, are identification and control data. Moreover, the asserted claims require that selection data be formed on the basis of (as opposed to, *e.g.*, "from") identification and control data, meaning that selection data can be formed on the basis of *any* identification and control data within the service multiplex— that is, on the basis of any data used to identify and/or configure services in the service multiplex.

### D.     Frame

Verizon agrees that the term "frame" is synonymous with a "digital packet," equating the terms throughout its invalidity contentions. (*See* Invalidity Contentions, at 15-31. Villegas Decl. ¶ 7, Ex. F (stating that "[t]he packetized digital data streams . . . include video data packets, audio

10

data packets, and associated data packets" and excerpting a figure, also replicated in Verizon's Technology Tutorial (D.I. 107, at 6:12), described as "a pictorial representation of a time division multiplexed packet television signal.").) Verizon cannot at once adopt one claim construction for its invalidity position and another for its non-infringement position. *See Amazon*, 239 F.3d at 1351.

## V.    CONCLUSION

SCO respectfully submits that its proposed constructions are fully supported by the law and facts of this case and that the Court should adopt its constructions in their entireties.

Dated: June 24, 2013

OF COUNSEL:

Karen H. Bromberg
Francisco A. Villegas
Damir Cefo
Joyce E. Kung
COHEN & GRESSER LLP
800 Third Avenue
New York, New York 10022
(212) 957-7600

BAYARD, P.A.

 /s/ *Stephen B. Brauerman*
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
(302) 655-5000
   *Attorneys for Suomen Colorize Oy*