

222 Delaware Avenue • Suite 900                                       Writer's Direct Access:
P.O. Box 25130 • Wilmington, DE 19899                                        (302) 429-4232
Zip Code For Deliveries 19801                              Email:  sbrauerman@bayardlaw.com

September 19, 2013
Redacted Version Filed on September 27, 2013

**BY CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:      *Suomen Colorize Oy v. Verizon Corp., et al.,* C.A. No. 12-715-LPS

Dear Judge Burke:

Plaintiff Suomen Colorize Oy ("SCO") respectfully requests that the Court compel
Defendants to produce a fully prepared 30(b)(6)witness or witnesses on topics 7b and 7d-7h
listed in SCO's Notice of Deposition, April 12, 2013 (Ex. A). These topics call for information
that is properly discoverable, central to the case, and available to Verizon.  Yet Verizon has
failed to produce any 30(b)(6) witness or combination of witnesses prepared to testify on them.
SCO has endeavored to resolve these issues through negotiations that have spanned several
months.[1]  But with the expert phase of the case soon to begin, SCO now reluctantly requests the
Court's assistance.

Specifically, SCO seeks testimony on information concerning:  (1) the metadata
associated with the data streams that Verizon receives, transports, and re-transmits (including
testimony on data added, extracted, or modified by Verizon) and (2) the use that Verizon makes
of metadata in its data streams to generate, select and/or operate its program guide.  This
information is at the very heart of the case.  Yet none of Verizon's designated witnesses were
prepared to provide competent testimony.



---

[1] Selected correspondence is attached as Exhibit B, including a summary of the parties' exchanges contained in the
Email from Villegas to Minnear dated August 23, 2013.  Subsequent references to correspondence are by sender,
recipient, and date for items included in Exhibit B.

Finally, SCO requests that the Court compel Verizon to produce documents sufficient to show the assumptions and calculations used to generate revenue and cost projections for Verizon's Interactive Media Guide ("IMG"). These materials are responsive to SCO's document requests and relevant to the strategic and business plans for the accused features and services.

Throughout this case, Verizon has tried to limit discovery to information that it unilaterally deems relevant. Verizon wants to restrict discovery to evidence that would prove infringement only under *Verizon's* theory of the case. This is not how discovery works. The Court should require Verizon to produce evidence relating to infringement under its *SCO's* reasonable construction of the patent and its own application of the claims to Verizon's services.

## I. Verizon Should Offer Properly Prepared 30(b)(6) Witnesses

As the Court is aware, the issue of infringement in this case turns on the relationship between (on the one hand) the metadata associated with media transmitted in multiplexed streams and (on the other) data used in the formation and use of the program guide. The patent requires in pertinent part that information for the selection of video services be formed on the basis of identification and control data (for example, metadata about television programming) located in multiplexed frames of broadcast video. It follows that the nature of the metadata received, processed, and transmitted by Verizon, and the uses to which that data is put, are at the center of the case.

All the testimony SCO seeks is within the scope of one or more 30(b)(6) topics – specifically 7b and 7d-7h. (*See* Ex. A.) But none of Verizon's witnesses has been able to testify on facts that are (1) essential to a basic understanding of the noticed topics and (2) crucially relevant to SCO's claims.

Shafiq Kassam was designated on topics 7d, 7f, and 7h (*see* Letter from Villegas to Minnear 5/26/13); but he was unable to answer questions within those topics, including basic questions about the metadata in streams received and processed by Verizon, and questions about

---

[2] Verizon's obligations are not diminished by the fact that data originates with a third party. Data received by Verizon is by definition "reasonably available" to Verizon under Rule 30(b)(6).

James Ho, designated for Topics 7b, 7d, 7e, and 7g, was similarly unable to answer basic questions central to the noticed topics and to the case. ███████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████

Kirk Cooper was designated on Topics 7d and 7e, in particular for testimony on data Verizon sends by to third party listing providers.  (*See* Letter from Villegas to Minnear 6/7/13.)
███████████████████████████████████████████████████████
████████████████████████████████████[4]

Verizon designated Jeffrey Zager on Topic 7h – in an attempt to address SCO's objections to the deficient testimony by Verizon's other witnesses, in particular Mr. Kassam's lack of knowledge ███████████████.  (*See* Email from Minnear to Villegas 5/30/13.)
████████████████████████████████████████████████  But despite Verizon's assurances, Mr. Zager was also ill prepared, and his testimony was full of gaps, reversals and contradictions, including inconsistencies with documents that Verizon had produced ██████████████████████████████████████.

Mr. Zager's contradictory testimony illustrates the need for a properly prepared witness.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████

---

[3] In addition, the testimony that Mr. Ho did provide was inconsistent with common knowledge on the technology. He stated that the transport stream would not include MGT (master guide table), VCT (virtual channel table), and EIT (event information table) fields – all of which are required for industry standard ATSC compliance. (Ho 47:3-23.)

[4] Verizon has suggested that lack of certainty does not mean 30(b)(6) testimony is deficient.  Such an argument is self-serving, ████████████████████████████████████████████
███████████████████████████████████

[REDACTED][5]

As an alternative to 30(b)(6) testimony on two of its noticed topics (7d and 7f), SCO has proposed that Verizon produce sample captures of the data streams that Verizon receives from content providers, the streams it transmits within its network, and the streams it sends to customers' set-top boxes.  (*See* Email from Villegas to Minnear 9/3/2013.)  SCO would need to verify the contents of sample captures with testimony, and take testimony on the uses that Verizon makes of the data.  But such a data production would still considerably shorten and simplify the additional testimony that SCO requests.  In fact, Verizon was the first to suggest an alternative to testimony at the July 24, 2013 meet and confer.

## II.  Verizon Should Be Compelled to Produce Responsive Data and Documents

[REDACTED]

---

[5] This is exactly the kind of "bandying" Rule 30(b)(6) is meant to prevent, with witnesses "deposed in turn . . . each disclaim[ing] knowledge of facts that are clearly known to persons in the organization and thereby to it."  Rule 30(b)(6) Notes of Advisory Committee 1970 Amendments.

[6] [REDACTED]

Finally, Verizon should also be compelled to produce documents sufficient to show the assumptions and calculations used to generate revenue and cost projections related to Verizon's interactive media guide ("IMG"). These documents are responsive to Request No. 1 in SCO's First Set of Requests for Inspection (Ex. G) – for documents concerning "strategic and business plans for the Accused Features."  Documents showing projected revenues and costs for the Accused Features are plainly relevant to strategic and business plans for them ███████████ ███████████████████████████████████████████████████████████████████████████ ████████ Verizon has argued that these documents are not discoverable because they "are related to finance, not overall business plans or strategic goals." (Letter from Minnear to Granovsky 6/17/13; *see also* Letter from Granovsky to Minnear 6/10/13.) ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ █████████████████

Respectfully submitted,

/s/ Stephen B. Brauerman

Stephen B. Brauerman (sb4952)

Enclosure

36342-1

cc:      All Counsel of Record

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SUOMEN COLORIZE OY,  )
)
)
Plaintiff,  )
)
v.  )      C.A. No. 12-715-CJB
)
VERIZON SERVICES CORP., VERIZON  )      JURY TRIAL DEMANDED
ONLINE LLC, and VERIZON DELAWARE  )
LLC,  )
)
Defendants.  )
)

## NOTICE OF DEPOSITION OF SUOMEN COLORIZE OY
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendants Verizon Services Corp., Verizon Online LLC, and Verizon Delaware

LLC (collectively, "Verizon"), through their undersigned counsel, will take the deposition by

oral examination of Plaintiff Suomen Colorize Oy ("SCO") on the topics set forth in the attached

Schedule A, through one or more of its officers, directors, or managing agents, or other persons

designated by SCO to testify on its behalf.

Verizon requests that SCO provide written notice, at least five business days in advance

of the deposition of: (1) the name(s) of each designee who has consented to testify on behalf of

SCO, (2) the job title of each such person, and (3) the topic(s) set forth in Schedule A on which

each such person will testify.

The deposition will commence on April 16, 2013 at 9:00 a.m. and will take place at the

offices of Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY 10019,

or at such other time and place as may be agreed by counsel. The deposition will be taken before

an officer authorized by the laws of the United States to administer oaths and will be recorded by

video and/or stenographic means. The deposition will continue from day to day until completed,

weekends and holidays excepted, with adjournments as to time and place as may be necessary.

Some or all of the deposition testimony may involve real-time computer connection between the

deposition taker and court reporter using software such as "LiveNote."


SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:                          */s/ Benjamin J. Schladweiler*
                                       Collins J. Seitz, Jr. (DE Bar No. 2237)
John L. North                          Benjamin J. Schladweiler (DE Bar No. 4601)
Darcy L. Jones                         100 S. West Street, Suite 400
KASOWITZ, BENSON, TORRES               Wilmington, DE 19801
  & FRIEDMAN LLP                       (302) 576-1600
Two Midtown Plaza, Suite 1500          cseitz@seitzross.com
1349 West Peachtree Street, N.W.       bschladweiler@seitzross.com
Atlanta, GA 30309
                                       *Attorneys for Defendants Verizon Services*
Norman E.B. Minnear                    *Corp., Verizon Online LLC, and Verizon*
KASOWITZ, BENSON, TORRES               *Delaware LLC*
  & FRIEDMAN LLP
1633 Broadway
New York, NY 10019


Dated: March 18, 2013

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on March 18, 2013, I caused *Notice of*

*Deposition of Suomen Colorize Oy Pursuant to Federal Rule of Civil Procedure 30(b)(6)* to be

served to the following individuals in the manner indicated:

| **VIA ELECTRONIC MAIL** | **VIA ELECTRONIC MAIL** |
|---|---|
| Richard D. Kirk | Karen H. Bromberg |
| Stephen B. Brauerman | Francisco A. Villegas |
| Vanessa R. Tiradentes | Damir Cefo |
| BAYARD, P.A. | Joyce E. Kung |
| 222 Delaware Avenue | COHEN & GRESSER LLP |
| Suite 900 | 800 Third Avenue |
| Wilmington, DE 19801 | New York, NY 10022 |
| (302) 655-5000 | (212) 957-7600 |
| rkirk@bayardlaw.com | kbromberg@cohengresser.com |
| sbrauerman@bayardlaw.com | fvillegas@cohengresser.com |
| vtiradentes@bayardlaw.com | dcefo@cohengresser.com |
| | jkung@cohengresser.com |
| *Attorneys for Plaintiff Suomen Colorize Oy* | |
| | *Attorneys for Plaintiff Suomen Colorize Oy* |

 /s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (Bar No. 4601)

## SCHEDULE A

## DEFINITIONS

As used herein and in all further requests for production, unless specified otherwise, the following definitions apply:

A.       "SCO," "Plaintiff," "You," and "Your" shall mean Suomen Colorize Oy and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

B.       "Patent-in-Suit" or "Asserted Patent" or the "'398 patent" refers to U.S. Patent No. 7,277,398.

C.       "Defendant," "Defendants," or "Verizon" refers to one or more of the named defendants in this action.

D.       "Foreign Counterpart Application" means any patent application filed anywhere in the world outside the United States (a) that claims priority in whole or in part from an application that resulted in a given patent; (b) that is the basis for the claim of priority in whole or part (including without limitation claims of benefits under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (c) that discloses the same subject matter as a given patent.

E.       "Related Patents or Patent Applications" means all patents and patent applications relating to the Patent-in-Suit, including any provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Patent-in-Suit, or claiming the benefit of the

filing date of any application whose benefit is claimed in the Patent-in-Suit, whether or not abandoned and whether or not issued.

F.      References to this "lawsuit," this "litigation," this "action," or this "case" means the above-captioned action brought by SCO.

G.      "DISH Litigation" means the actions styled as *Suomen Colorize Oy v. DISH Network LLC et al.*, C.A. Nos. 8:10-cv-2406 (M.D. Fla.), 1:11-cv-1815 (D. Colo.).

H.      "Infringement," "infringing," "infringe," and "infringed" shall mean direct infringement, contributory infringement, induced infringement, literal infringement, and/or infringement under the doctrine of equivalents.

I.      "Asserted Claims" refers to any claim(s) of the Patent-In-Suit that You assert, in this action, have been infringed by any Defendant.

J.      "Named Inventor" refers to Risto Mäkipää, the individual named on the face of the '398 patent.

K.      "Domiras Oy" means Domiras Oy and all related entities, predecessors, successors, subsidiaries, divisions, and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

L.      "Prior Art" is used in these Topics in the same sense that it is used in 35 U.S.C. §§ 102 or 103, including without limitation, any patent, printed publication, prior knowledge, prior use, prior sale, or offer for sale or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

M.      "Person" and "Individual" are defined as any natural person or any business, legal or government entity or association.

N.      "Third party" means and includes any person or persons other than Verizon and SCO.

O.      "Accused Products" means any systems, products and/or services made, used, sold, or offered for sale by any Defendant that You contend infringes any claim of the Asserted Patent.  In referring to any product as an "Accused Product," Verizon in no way communicates its agreement that any Accused Product infringes any claim of the Asserted Patent or is rightfully the subject of suit in this matter.

P.      "Relevant Products" means any product or service relating to the Patent-in-Suit and Related Patents or Patent Applications, including but not limited to any process, procedure, system, and/or method relating to electronic program guides generally and/or providing services and data regarding available service selections using a terminal and one or more telecommunications networks, wherein the selection data of a service is formed by using identification and control data of the services that is located in multiplexed frames used for transmitting the services.

Q.      "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).  By way of illustration and without limitation, documents include at least the following: originals, drafts and all nonidentical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products.

R.      The term "Identity" and shall mean, as the context shall make appropriate:

    (a)      With respect to a person, the name, present or last known address, telephone number, occupation and employer;

    (b)      With respect to a corporation, partnership, association or other entity, its full name, form of organization, and its present or last known address and telephone number; and

S.      "Communicate" or "communication" means every manner or means of disclosure, transfer, transmission or exchange of information whether person-to-person, in a group, by telephone, by letter, facsimile, electronic or computer mail, voicemail, telex or telecopy, or by any other process, electric, electronic, or otherwise.

T.      "Concern," "concerning," "relate," "related" or "relating" shall mean referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a Topic.

U.      The term "role" means the level of involvement of a person in an activity, the tasks performed by a person in an activity, whether a person was the primary person in charge of an activity, and whether a person had a supervisory or day-to-day responsibility for an activity.

V.      The terms "and" and "or" whenever used herein shall be understood in both the conjunctive and disjunctive sense, synonymous with "and/or."

W.      Any noun used in the singular form shall be construed and applied so as to also include the plural form, and vice versa.

## DEPOSITION TOPICS

1.      SCO's ownership of and/or interest in the Patent-in-Suit, including but not limited to the complete chain of title from the Named Inventor to SCO, all assignments and/or licenses

of the Patent-in-Suit granted to or by SCO, and the decision to grant or obtain any license or sublicense to patents relating to the subject matter claimed by the Patent-in-Suit, including all executed licenses and sublicenses covering the Patent-in-Suit.

2.      The identity of all documents, materials, physical items, information, and data that You:  (a) acquired in the same or a related transaction and/or at the same time and/or in association with Your acquisition of the Patent-in-Suit and (b) have not been produced to Verizon by You in this litigation.

3.      The reason(s) You have not produced any other documents, materials, physical items, information, or data that You acquired in the same or a related transaction and/or at the same time and/or in association with Your acquisition of the Patent-in-Suit.

4.      The prosecution (including the preparation and filing) of the applications leading to the Patent-in-Suit or any Related Patents or Patent Applications.

5.      The prosecution (including the preparation and filing) of any Foreign Counterpart Applications corresponding to the application leading to the Patent-in-Suit or any Related Patents or Patent Applications.

6.      The identity and role of each attorney (whether outside or in-house counsel) involved in the prosecution of the application that led to the Patent-in-Suit or any Related Patents or Patent Applications.

7.      The identity and role of each person who was and/or is involved in the research, development, marketing, offering for sale, or sale by You, the Named Inventor, anyone working with the Named Inventor, or Domiras Oy relating to the Patent-in-Suit or Related Patents or Related Applications, or any Relevant Products.

8.     The preparation of all invention disclosure(s) concerning the subject matter claimed in the Patent-in-Suit.

9.     The conception, design, development, and/or reduction to practice of any invention claimed in the Patent-in-Suit.

10.     The date(s) and circumstances of the conception and reduction to practice of the subject matter claimed in the Patent-in-Suit, any diligence in the reduction to practice thereof, and an identification of all evidence that corroborates the date(s) of such conception and reduction to practice or corroborates any diligence.

11.     All source code, schematics, circuit diagrams, architecture diagrams, server files, networking guides, process flows, data sheets, specifications, designs, manuals, user guides, and other documents concerning the design or operation of the technology claimed in the Patent-in-Suit.

12.     The first manufacture, first use, first sale and/or first offer for sale in the United States and the first publication anywhere of any products, services, or methods that you contend are within the scope of the claims of the Patent-in-Suit.

13.     SCO's awareness of interactive or electronic programming guides prior to the filing of the application for the Patent-in-Suit.

14.     Any attempt to commercialize, sell or explore the market for any alleged invention claimed in the Patent-in-Suit, prior to the application for the patent thereof, including, without limitation, demonstrations, testing (including, but not limited to, beta testing), bug reports, correspondence, sales reports, sales forecasts, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training

materials, quotes, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

15. Any study, investigation or other inquiry by SCO or anyone on behalf of SCO or obtained from anyone else, whether orally or in writing, concerning the validity, enforceability, scope or infringement of the Patent-in-Suit, or of any Foreign Counterparts thereof, including, but not limited to, any patents, printed publications, products and other factual information discovered and/or considered during such study, investigation, or other inquiry and any and all Prior Art searches and investigations.

16. Any and all due diligence searches, studies, evaluations, or opinions concerning the Patent-in-Suit and any Related Patents or Patent Applications, or any Foreign Counterpart Applications, and/or any subject matter disclosed or claimed therein.

17. The identification of all products or services upon which SCO intends to rely upon to demonstrate commercial success of the invention claimed in the Patent-in-Suit, and all facts and circumstances that evidence, support, or contradict their commercial success, including all documents and communications relating thereto.

18. All Prior Art to the Patent-in-Suit or any Related Patents or Patent Applications, or any Foreign Counterpart Applications known by or identified to SCO.

19. Each and every search known by or conduct by, for, or on behalf of SCO on all, or any part, of the subject matter of the Patent-in-Suit, and all Prior Art, publications, or other materials identified or discovered in connection therewith, including without limitation documents and things concerning the date on which SCO first became aware of the Prior Art, publications or materials.

20. Any Accused Product, the use of which SCO claims infringes the Patent-in-Suit.

21.     SCO's awareness and/or investigation of any Accused Product prior to the filing of this lawsuit.

22.     The activities of any third party making, using or selling of all products, services, and methods that you contend are within the scope of the claims of the Patent-in-Suit in any form in the United States or any country, and all analyses performed by You or on Your behalf relating thereto.

23.     Any agreement where SCO is a party to the agreement, including any non-disclosure agreements, or agreements to share information, concerning the present litigation, the Patent-in-Suit or technical information concerning any Relevant Products.

24.     Any consideration ever paid, agreed upon, offered, demanded or received for any use of or rights or interest in the Patent-In-Suit or for alleged infringement of the Patent-in-Suit, including the settlement of disputes or litigation, licenses, potential licenses, royalties, potential royalty rates or royalty bases, alleged damages, enforcement, or assignment of the Patent-in-Suit.

25.     Forecasts or projections of sales, revenues, costs, and profits for the licensing and/or enforcement of the Patent-in-Suit.

26.     The identity of all licensees or prospective licensees to whom You have presented, demonstrated, offered to sell, sold, leased, or licensed the Patent-in-Suit or offered to do the same, and any and all reasons expressed by any licensee or prospective licensee as to why they entered or declined to enter into a license agreement for the Patent-in-Suit.

27.     Your policies, practices, procedures, guidelines, or instructions related to the acquisition or licensing of intellectual property, including licenses to be granted by You or patents to be acquired by You.

28.     License agreements and royalty rates for licenses on patents comparable or related to the technology claimed in the Patent-in-Suit.

29.     The value SCO or anyone else has assigned or ascribed to the Patent-in-Suit or any claim for infringement of the Patent-in-Suit.

30.     The market or demand for products, methods, or services that allegedly are covered by the claims of the Patent-in-Suit, including without limitation market surveys, market analyses, and forecasts, or projections of production levels or customer demand for such products, methods, or services.

31.     Investigations, analyses, and comparison performed by You, the Named Inventor, or any other third party at Your direction, prior to the filing of this lawsuit, to determine if any product or service made, used, offered for sale, sold, and/or operated by any Defendant (or use thereof) infringes the Patent-in-Suit.

32.     Any proposed, offered, contemplated or actual license, sale, covenant, settlement, negotiation, discussion, offer, agreement, transfer, or assignment of any rights or interest concerning the Patent-in-Suit, whether or not consummated.

33.     All efforts to exploit, commercialize, license, sell or enforce the Patent-in-Suit, any interest therein, or any invention claimed therein from the filing date of the Patent-in-Suit to the present.

34.     The identity of all person(s) and entity(ies) with a pecuniary interest in the outcome of this case, the nature and amount of each such pecuniary interest and the expected allocation of any proceeds from this lawsuit.

35.     Communications between SCO and Verizon prior to the filing of this lawsuit.

36.     Communications between SCO and any non-party to this lawsuit, including but not limited to any non-party in the DISH Litigation, regarding any aspect of the Patent-in-Suit, any related patent or application, or any alleged infringement thereof.

37.     SCO's investigation and efforts to collect and produce documents in response to Defendants' requests for production of documents in this action, including but not limited to the identity of all individuals and entities from which You have searched for and collected documents, and the custodians of such documents.

38.     SCO's policies and procedures related to the retention of documents.

39.     SCO's investigation and efforts in responding to Defendants' Interrogatories to SCO.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SUOMEN COLORIZE OY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C.A. No. 12-715-CJB |
| | ) |
| VERIZON SERVICES CORP., | ) |
| VERIZON ONLINE LLC, and | ) |
| VERIZON DELAWARE LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**VERIZON SERVICES CORP., VERIZON ONLINE LLC, AND
VERIZON DELAWARE LLC'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S NOTICE OF DEPOSITION PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

Defendants Verizon Services Corp., Verizon Online LLC, and Verizon Delaware LLC

(collectively, "Verizon") hereby respond and object to Plaintiff Suomen Colorize Oy's

("Plaintiff") Rule 30(b)(6) Deposition (the "Notice") as follows:

**GENERAL OBJECTIONS**

Verizon asserts the following General Objections and reservations of rights with respect

to the Notice and to each and every individual Topic listed in Exhibit A (individually, "Topic,"

or collectively, "Topics"), whether or not restated specifically in each response.  The objections

to individually numbered Topics following each Topic are intended to supplement the General

Objections and do not limit the applicability of the General Objections that are hereby

incorporated in each response.

1.      Verizon objects to the date and location of the deposition specified in the Notice. Where indicated below, Verizon will make one or more designated witnesses available at a time and location to be mutually agreed upon by the parties.

2.   Verizon objects to each Topic and to the "Definitions" to the extent that they impose burdens and obligations on Verizon that are greater than or different from those obligations set forth in the Federal Rules of Civil Procedure and/or by the Local Rules of the United States District Court for the District of Delaware ("Local Rules"), and/or give meaning to words contrary to their ordinary English meaning or definitions set forth in applicable statutes or rules. Verizon's responses are made in accord with the applicable Federal and Local Rules.

3.   Verizon objects to the definition of the term "Accused Features" to the extent that Plaintiff's definition could be read not to delimit the category of Accused Features.  Verizon interprets "Accused Features" to consist of systems and processes for creating, transmitting, processing, and using Interactive Media Guide and Electronic Program Guide Data for selecting FiOS TV programming as incorporated in the products listed in the Plaintiff's definition and current and prior versions with substantially similar features or operation.

4.      Verizon objects to each Topic to the extent that it is overly broad, unduly burdensome, oppressive, and/or duplicative, including but not limited to the extent that it seeks information already in Plaintiff's possession, custody or control or that are available from public sources because the burden of obtaining access to such information is equal for both parties.

5.      Verizon objects to each Topic to the extent that it is vague, ambiguous, and/or fails to set forth with reasonable particularity the information requested.  To the extent Verizon agrees to provide a witness to testify concerning a Topic, it will prepare such witness based on Verizon's understanding of the Topic.

6.      Verizon objects to each Topic to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Nothing contained herein is intended to be or should be construed as a waiver of such privileges, immunities, or protections, and inadvertent disclosure of any privileged material should not be considered a waiver of any applicable privileges, immunities, or protections.

7.      Verizon objects to each Topic to the extent that it seeks information that is unknown or not reasonably available to Verizon, including information that is not within the possession, custody, or control of Verizon.

8.      Verizon objects to each Topic to the extent that it seeks information subject to the confidentiality rights of third parties not affiliated with Verizon.  In particular, Verizon objects to the extent a Topic seeks disclosure of information prohibited by the terms of any protective order, contractual obligation, or any other obligation of confidentiality between Verizon and third parties.  Verizon will not provide information that is subject to confidentiality rights of third parties without prior consent from such parties or pursuant to an Order by this Court.

9.      Verizon objects to each Topic to the extent it contains multiple subparts but purports to be a single Topic.

10.      Verizon objects to Plaintiffs' definitions of "Verizon," "Defendants," "You," and "Your" as overbroad and unduly burdensome to the extent they purport to include representatives, predecessors, successors, affiliates, direct or indirect parents, direct or indirect subsidiaries, directors, officers, employees, agents, and assignees, irrespective of the relevance of such individuals' or entities' actions or documents and irrespective of whether such information is in Verizon's possession, custody, or control, except that Verizon will not refuse to produce

discovery on the grounds that Verizon Communications Inc. is in possession, custody, or control

of such discovery, pursuant to the parties' stipulation (D.I. 9).  Verizon further objects to these

definitions to the extent they purport to require testimony neither relevant to any issue in dispute

in the present action nor reasonably calculated to lead to the discovery of admissible evidence.

Verizon further objects to these definitions to the extent they seek to impose obligations beyond

those required by the Federal Rules of Civil Procedure or the Local Rules or require Verizon to

provide information outside of its possession, custody, or control.

11.     Verizon objects to each Topic to the extent that it calls for legal conclusions or

calls for expert testimony or evidence regarding claim construction independent of the procedure

and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

12.      Verizon objects to each Topic to the extent that it seeks information that is

neither relevant to the subject matter involved in the present action nor reasonably calculated to

lead to the discovery of admissible evidence.

13.     Verizon objects to each Topic to the extent it assumes disputed facts or legal

conclusions in defining the information requested.  In agreeing to provide witnesses to testify,

Verizon neither admits nor denies any such disputed facts or legal conclusions.

14.     Verizon objects to each Topic as unduly burdensome, oppressive, and harassing

to the extent it seeks information already in Plaintiff's possession, custody, or control or that is

available from public sources and to the extent it seeks to require Verizon to create information

not now in existence.

15.     Where Verizon agrees to provide testimony, it does so subject to the General and

Specific Objections contained herein, without conceding the relevance or materiality of the

information provided, and without prejudice to Verizon's right to object to further discovery, or

to object to the admissibility of any additional proof on the subject matter of any testimony at the time of hearing or trial.

16.     To the extent Verizon designates herein a witness, the designee will testify based upon information reasonably available.

17.     To the extent Verizon designates herein a witness, such witness will only testify within the designated scope of the Notice and will not provide testimony outside the scope of the Notice or in the witness's individual capacity unless the scope and nature of such testimony is agreed upon by the parties in advance of the deposition.

18.     Verizon's agreement to provide one or more witness(es) to testify concerning a Topic is not a representation that information responsive to that Topic exists or that Verizon actually possesses or can obtain information responsive to that Topic.

19.     Verizon objects to each Topic to the extent it seeks disclosure of its own confidential information.  Where Verizon agrees to provide testimony, it does so subject to the terms of the Amended Joint Stipulation and Discovery Confidentiality Order entered in this case [D.I. 39].

## RESPONSES AND OBJECTIONS

**Topic No. 1:**

All past, current, and future-planned deployments of the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify on this Topic.

**Topic No. 2**:

General architecture of the Accused Features.

**Response**:

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic as vague and ambiguous as to the meaning of "general architecture."

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify on this Topic.

**Topic No. 3**:

Systems, components, and/or devices installed at, comprising, and/or enabling the Accused Features, including those of third party providers of hardware and software concerning the Accused Features, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**Response**:

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information as to which Verizon has confidentiality obligations to third parties.  Verizon further objects to the extent this Topic seeks testimony on information outside of Verizon's possession, custody, and control.  Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or

protections.  Verizon further objects to this Topic as unintelligible insofar as it is unclear how, for example, a device can be "installed at" or "comprise" a feature.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify regarding the relationship of the Accused Features to any systems, components, and/or devices on which they operate.

**Topic No. 4:**

Services provided, supported, and/or enabled by the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent that it calls for testimony regarding claim construction independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].  Verizon further objects to this Topic as overly broad and unduly burdensome because the services provided, supported, and/or enabled by the Accused Features are not at issue in this litigation and testimony regarding them is not relevant to any claims or defenses in this case, nor reasonably calculated to lead to the discovery of such evidence.

**Topic No. 5:**

Research, design, and development of the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify on this Topic.

**Topic No. 6:**

The identity and role of each person who was and/or is involved in the research, development, marketing, offering for sale, or sale by You of the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this Topic as overly broad and unduly burdensome to the extent that it would require an identification of individuals with minimal involvement related to the Accused Features if read to include any individual with any involvement in the research, development, marketing, offering for sale, or sale by You of the Accused Features.  Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections. Verizon further objects to the Topic as unintelligible to the extent it rests on the assumption that Verizon sells or offers for sale the Accused Features.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify regarding the identity and roles of individuals with substantial responsibility regarding the research, development, and marketing (if any) of the Accused Features.

**Topic No. 7:**

Technical features and operation of the Accused Features, including without limitation:

a.  Function and operation of the national backbone network, metro backbone network, access network, optical transport network, multiplexers, distribution hubs, passive

optical networks, SHE, VHO, VSO, central office, data centers, and video servers;

b.  The multiplexing process, including all data and metadata, including without

limitation tables and arrays, processed for, received, extracted, removed from, created

for, and input to the multiplexed streams delivered to Your customers;

c.  All communications, from the SHE through to Set-Top Boxes and mobile devices;

d.  All data and metadata that You send to and receive from Third Parties, including

broadcasters, program listings providers such as FYI, **REDACTED**

**REDACTED** ;

e.  The use and function of the data and metadata identified in subsection (d) for the

Accused Features;

f.  All data related to the Accused Features, including without limitation tables and

arrays, delivered to Your customers over any communications channel used by FiOS;

g.  Identification, purposes and functions related to the Accused Features of all data and

metadata delivered in the multiplexed stream and over IP to Your customers;

h.  **REDACTED**

**REDACTED**

i.  Communication between and assignment of a processor, controller, system manager,

session manager, and/or software processes to a subscriber's Set-Top Boxes and

mobile devices for providing, transmitting, supporting, and/or enabling the Accused

Features;

j.  Communication between and assignment of a processor, controller, system manager,

session manager, and/or software processes to a subscriber's DCR device and

CableCard for providing, transmitting, supporting, and/or enabling FiOS TV;

9

    k.   Generation and population of interactive pages, including without limitation the electronic program guide user interface on the IMG; and

    l.   Function and operation of the CableCard.

**Response:**

In addition to its General Objections, Verizon objects to this Topic as overly broad and unduly burdensome to the extent it seeks information unrelated to the Accused Features or the Patent-in-Suit and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, but without limitation, to the extent the Topic could be read to encompass "interactive pages" in FiOS TV that are not the Accused Features, functioning of Verizon's fiber-optic networks unrelated to the Accused Features or the Patent-in-Suit, or the operation of devices that do not access Verizon's IMG, such as DCR devices or CableCards, this Topic does not seek discoverable information and is contrary to SCO's representations regarding the limited nature of discovery in this case. Verizon further objects to this Topic as vague and ambiguous to the extent it uses terms susceptible to multiple interpretations. Verizon objects to this Topic to the extent that it calls for testimony regarding claim construction independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19]. Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections. Verizon further objects to this Topic to the extent it seeks information in which third parties have confidentiality rights.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify regarding sub-topics (b), (c), (d), (e), (f), (g), (h), (i), and (k) to the extent they relate to the Accused Features.

**Topic No. 8:**

All source code, schematics, circuit diagrams, architecture diagrams, server files, networking guides, process flows, data sheets, specifications, designs, manuals, user guides, and other documents concerning the design and operation of the technology of the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this Topic as overly broad and unduly burdensome to the extent the topic requests a witness to be familiar with each page of every document and every line of source code related to the design and operation of the technology of the Accused Features.  Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic to the extent it seeks information in which third parties have confidentiality rights.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place to testify regarding representative documents concerning the design and operation of the technology of the Accused Features.

**Topic No. 9:**

Sale, offer for sale, and import of the Accused Features, whether by, for, or at Your direction, or on Your behalf, directly or indirectly.

**Response:**

In addition to its General Objections, Verizon objects to the Topic as unintelligible to the extent it rests on the assumption that Verizon sells or offers for sale the Accused Features. Verizon further objects to the Topic as vague and ambiguous as to whether the term "import"

means importance or importation.  Verizon interprets the term in this context to mean

importance.  Verizon further objects to this request because it seeks to discover information that

is the subject of expert testimony independent of the procedure and schedule in the Court's

August 27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more

designee(s) at a mutually agreeable time and place to testify regarding the importance of the

Accused Features to the sale and offer for sale of FiOS TV.

**Topic No. 10**:

Licenses and settlements, including but not limited to intellectual property,

associated with each of the Accused Features.

**Response**:

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks

information in which third parties have confidentiality rights.  Verizon further objects to this

Topic to the extent it seeks information protected from disclosure by the attorney-client

privilege, work product doctrine, joint defense privilege, common interest privilege, or any other

available privileges, immunities, or protections.

Subject to and without waiving its objections, Verizon will produce one or more

designee(s) on this topic at a mutually agreeable time and place.

**Topic No. 11**:

Importance of the Accused Features to attracting and maintaining subscribers and

growing revenues.

**Response:**

In addition to its General Objections, Verizon objects to this request because it seeks to discover information that is the subject of expert testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more designee(s) on this topic at a mutually agreeable time and place.

**Topic No. 12:**

Importance of the Accused Features to other FiOS TV products and services.

**Response:**

In addition to its General Objections, Verizon objects to this request because it seeks to discover information that is the subject of expert testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more designee(s) on this topic at a mutually agreeable time and place.

**Topic No. 13:**

Design considerations related to the Accused Features to reduce subscriber turnover and/or provide access to new revenue generating opportunities from subscribers and advertisers.

**Response:**

In addition to its General Objections, Verizon objects to this request because it seeks to discover information that is the subject of expert testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more

designee(s) on this topic at a mutually agreeable time and place.

**Topic No. 14:**

Past, current, and projected revenues, profits, costs, gross margins, operating

margins, and incremental profit margins attributable to Your FiOS TV system and its features,

including but not limited to the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this topic as overly broad and

unduly burdensome because of the number of aspects of FiOS TV unrelated to the Accused

Features.  Verizon further objects to this request because it seeks to discover information that is

the subject of expert testimony independent of the procedure and schedule in the Court's August

27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more

designee(s) on this topic at a mutually agreeable time and place.

**Topic No. 15:**

Any competitive market analysis, or analysis of competitors, both former and

current, conducted by You or on Your behalf, that cover, refer to, or relate to each Accused

Feature.

**Response:**

In addition to its General Objections, Verizon objects to this Topic as overly broad and

unduly burdensome to the extent that information "cover[ing]" or "refer[ring] to" the Accused

Features without more is not relevant to any claims or defenses in this case, nor reasonably

calculated to lead to the discovery of such evidence.  Verizon further objects to this request

because it seeks to discover information that is the subject of expert testimony independent of the

procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

Subject to and without waiving its objections, Verizon will produce one or more

designee(s) at a mutually agreeable time and place to testify regarding competitive market

analyses or analyses of current or former competitors related to the Accused Features.

**Topic No. 16:**

Basis for any theory of damages to be relied on by You in the event infringement

is established.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks

information protected from disclosure by the attorney-client privilege, work product doctrine,

joint defense privilege, common interest privilege, or any other available privileges, immunities,

or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon

further objects to this request because it seeks to discover information that is the subject of expert

testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling

Order [D.I. 19].

**Topic No. 17:**

Date and circumstances under which You first became aware of the Patent.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks

information protected from disclosure by the attorney-client privilege, work product doctrine,

joint defense privilege, common interest privilege, or any other available privileges, immunities,

or protections.  Verizon further objects to this Topic as unduly burdensome because it seeks

information already in Plaintiff's possession.  Verizon further objects to this topic as not

relevant, nor reasonably calculated to lead to the discovery of admissible information.

**Topic No. 18:**

Opinions about the Patent relied on by You.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks

information protected from disclosure by the attorney-client privilege, work product doctrine,

joint defense privilege, common interest privilege, or any other available privileges, immunities,

or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon

further objects to this topic as not relevant, nor reasonably calculated to lead to the discovery of

admissible information.

**Topic No. 19:**

Standards for the development of technical specifications supporting cable

telecommunications and digital television transmission.

**Response:**

In addition to its General Objections, Verizon objects to this topic on the ground as

overly broad and unduly burdensome and that given the breadth of the topic, it would be

essentially impossible to prepare a witness or witnesses to testify regarding it.  Verizon further

objects to this Topic to the extent it seeks information protected from disclosure by the attorney-

client privilege, work product doctrine, joint defense privilege, common interest privilege, or any

other available privileges, immunities, or protections.

**Topic No. 20:**

Your patents and patent applications related to the Accused Features.

**Response:**

In addition to its General Objections, Verizon objects to this topic on the ground as overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible information.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

**Topic No. 21:**

Evidence upon which You rely to support Your construction of the claims necessary to avoid infringing the Patent.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon further objects to this request because it seeks to discover claim construction information independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

**Topic No. 22:**

Prior Art that is claimed by You to be relevant to the Patent.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine,

joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon further objects to this request because it seeks to discover information that is the subject of expert testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

**Topic No. 23:**

Basis for Your allegations in Your affirmative defenses.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon further objects to this request because it seeks to discover information that is the subject of expert testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

**Topic No. 24:**

Basis for Your allegations in Your counterclaims.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.  Verizon further objects to this Topic as seeking a legal conclusion.  Verizon further objects to this request because it seeks to discover information that is the subject of expert

testimony independent of the procedure and schedule in the Court's August 27, 2012 Scheduling Order [D.I. 19].

**Topic No. 25:**

Your effort to search for and collect documents responsive to SCO's requests for production of documents in this action.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

Subject to and without waiving its objections, Verizon will produce one or more designee(s) at a mutually agreeable time and place on this Topic.

**Topic No. 26:**

Your investigation and efforts in responding to SCO's Interrogatories to Defendants.

**Response:**

In addition to its General Objections, Verizon objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

**Topic No. 27:**

Your corporate and internal organization.

**Response:**

In addition to its General Objections, Verizon objects to this topic on the ground as overly broad and unduly burdensome and not relevant to any issue in dispute in the present action nor reasonably calculated to lead to the discovery of admissible evidence.

**Topic No. 28:**

Your information technology systems and electronically stored evidence:

a.  Your written policies and procedures concerning electronic records and electronic information management, including, without limitation, storage, maintenance, backups, rotation and deletion;

b.  Your document management systems and electronic information management systems;

c.  Locations of electronically stored information concerning materials for the Accused Features including parent, and subsidiary storage, access, and transportation of documents, materials, and electronic information;

d.  Written policies and enforcement procedures about employee use of company computers and data, including, without limitation, desktop and laptop computers or electronic devices, home-based computers or electronic devices used for company business, and Your policies and procedures concerning electronic communication devices;

e.  Computers currently in use and computers no longer in use, including number, types and locations, operating systems with versions, dates of use and upgrade history, application software with versions, dates of use and upgrade history;

f.  Network architecture, network topology, file-naming conventions, location-saving

conventions, disk or tape labeling conventions;

g.  Company email systems and instant messaging systems, including company intranets, onsite and off-site servers, offsite escrow services, archival systems and procedures, including disk, tape, or other media, backup procedures, inventories and schedules, including tape reuse cycles;

h.  Portable devices, including but not limited to portable digital assistants (PDAs), Cellular telephones, Mini computers, external hard drives, CDs and DVDs, and USB flash drives;

i.  Your database and systems administration; and

j.  Identities of current and former personnel who have or had access to network administration, backup, archiving, or other system operations during any relevant time period concerning information and evidence relevant to the Accused

k.  Features, including documents and electronic information located with Your parent or subsidiary companies.

**<u>Response</u>:**

In addition to its General Objections, Verizon objects to this topic on the ground as overly broad and unduly burdensome and not relevant to any issue in dispute in the present action nor reasonably calculated to lead to the discovery of admissible evidence and that given the breadth of the topic, it would be essentially impossible to prepare a witness to testify. Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

**Topic No. 29**:

Your access and use of documents in the possession of Your parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing to meet Your ordinary business needs.

**Response**:

In addition to its General Objections, Verizon objects to this topic on the ground as overly broad and unduly burdensome and not relevant to any issue in dispute in the present action nor reasonably calculated to lead to the discovery of admissible evidence.  Verizon further objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other available privileges, immunities, or protections.

SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:                                        /s/ Benjamin J. Schladweiler

                                                     Collins J. Seitz, Jr. (Bar No. 2237)
John L. North                                        Benjamin J. Schladweiler (Bar No. 4601)
Darcy L. Jones                                       100 S. West Street, Suite 400
KASOWITZ, BENSON, TORRES                             Wilmington, DE  19801
  & FRIEDMAN LLP                                     (302) 576-1600
Two Midtown Plaza, Suite 1500                        cseitz@seitzross.com
1349 West Peachtree Street, N.W.                     bschladweiler@seitzross.com
Atlanta, GA  30309
jnorth@kasowitz.com                                  *Attorneys for Defendants Verizon Services*
djones@kasowitz.com                                  *Corp., Verizon Online LLC, and Verizon*
                                                     *Delaware LLC*

Norman E.B. Minnear
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, NY  10019
jminnear@kasowitz.com


Dated:  April 23, 2013

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin J. Schladweiler, hereby certify that on April 23, 2013, I caused the foregoing *Verizon Services Corp., Verizon Online LLC, and Verizon Delaware LLC's Responses and Objections to Plaintiff's Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6)* to be served via electronic mail to the following individuals:

**<u>VIA ELECTRONIC MAIL</u>**

Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE  19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Plaintiff Suomen Colorize Oy*

**<u>VIA ELECTRONIC MAIL</u>**

Karen H. Bromberg
Francisco A. Villegas
Damir Cefo
Joyce E. Kung
COHEN & GRESSER LLP
800 Third Avenue
New York, NY  10022
(212) 957-7600
kbromberg@cohengresser.com
fvillegas@cohengresser.com
dcefo@cohengresser.com
jkung@cohengresser.com

*Attorneys for Plaintiff Suomen Colorize Oy*

 /s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (Bar No. 4601)

# EXHIBIT B

**COHEN & GRESSER** LLP

800 Third Avenue
New York, New York 10022
212 957 7600 phone
212 957 4514 fax
www.cohengresser.com

Francisco A. Villegas
212 957 2018
fvillegas@cohengresser.com

April 11, 2013

**VIA E-MAIL**

Norman E.B. Minnear, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

   Re: *Suomen Colorize Oy v. Verizon Services Corp., et al.,*
     C.A. No. 12-715-CJB (D. Del.)

Dear Jack:

  We write in further response to your April 9 email addressing our prior day's call about depositions and outstanding discovery. (See Email from J. Minnear to F. Villegas, attached as Exhibit A.) Your email contains several mischaracterizations regarding SCO's positions and purported proffers that we intend to correct here.

  As an initial matter, we did not, contrary to your suggestion, request a 60-day extension of fact discovery. Instead, as an accommodation to you, we merely offered Verizon an extension of time to produce outstanding documents and to prepare witnesses for deposition. Nor did we request a modification of the existing *Markman* schedule but rather, merely said that we would consider a postponement if Verizon felt it was necessary. We do not currently feel that it is.

  Putting that aside, whether the parties can reach an agreement on outstanding discovery is irrelevant to Verizon's continuing failure to comply with its discovery obligations. SCO has routinely identified numerous deficiencies and concerns with Verizon's production over the phone and in its letters of at least March 26, 29, and April 9. Verizon's vague and incomplete responses to SCO's requests show an unwillingness, on its part, to investigate and comply with its discovery obligations, and we are growing increasingly concerned over Verizon's hide-the-ball conduct. For example, at least the following deficiencies have yet to be corrected:



**COHEN & GRESSER** LLP

Norman E.B. Minnear
April 11, 2013
Page 2



     Mobile apps (Request Nos. 26-28, 30-32): Please provide a response to our March 29 letter.  (See Letter from J. Kung to D. Jones, attached as Exhibit F.)

     Licensing and royalties (Request Nos. 12, 13, 47, 48): Please provide a response to our April 9 letter.  (See Letter from A. Por to D. Jones, attached as Exhibit G.)

COHEN & GRESSER LLP

Norman E.B. Minnear
April 11, 2013
Page 3

      As depositions are quickly approaching, we request that all outstanding documents be produced within five calendar days. If Verizon does not agree to comply, please indicate by tomorrow whether you are available to meet and confer on Monday, April 15 in a final effort to avoid court intervention, which we will immediately seek.

Sincerely,

Francisco Villegas

cc:    Karen H. Bromberg (via e-mail)
       Damir Cefo (via e-mail)
       Joyce E. Kung (via e-mail)
       Stephen B. Brauerman (via e-mail)
       Vanessa Ribeiro Tiradentes (via e-mail)
       Collins J. Seitz (via e-mail)
       Benjamin J. Schladweiler (via e-mail)
       John L. North (via e-mail)
       Darcy L. Jones (via e-mail)

# Exhibit A