**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUOMEN COLORIZE OY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-715-CJB |
| | ) | |
| VERIZON SERVICES CORP., | ) | |
| VERIZON ONLINE LLC, and | ) | |
| VERIZON DELAWARE LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

In this action, Plaintiff Suomen Colorize Oy ("SCO") brought suit against Verizon

Services Corporation, Verizon Online LLC and Verizon Delaware LLC (collectively, "Verizon"),

alleging that Verizon infringed United States Patent No. 7,277,398 ("the '398 patent"), which

describes methods and systems that are sometimes referred to as electronic program guides. (D.I.

1) Pending before the Court is a joint motion brought by SCO and Verizon to resolve certain

discovery disputes. (D.I. 123) For the reasons set forth in this Memorandum Order, the Court

GRANTS-IN-PART each party's request for discovery.

**I.      BACKGROUND**

On September 17, 2013, SCO and Verizon submitted a Joint Motion to Resolve

Discovery Disputes. (D.I. 123) Verizon's initial letter brief, dated September 19, 2013, set forth

its position that SCO's testimony provided pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure (hereafter, "Rule 30(b)(6)") was inadequate. (D.I. 124) This letter brief raised a

general objection to the choice and preparation of SCO's only Rule 30(b)(6) witness, Janne

Jokela, and identified seven topics for which Mr. Jokela's testimony was purportedly insufficient.

(D.I. 124 at 2-4)  In a separate letter brief, filed September 19, 2013, SCO alleged that Verizon's

Rule 30(b)(6) testimony was not "competent" and requested additional testimony on six topics.

(D.I. 125 at 1-4)  SCO also sought an order compelling Verizon to produce data and/or

documents regarding two discovery issues.  (*Id*. at 4-5)

On September 24, 2013, the Court held a teleconference to hear counsels' arguments

regarding these letter briefs.  The Court took the matters under advisement and, based upon

counsels' statements that resolution of some issues may be possible absent the Court's

involvement, requested that the parties thereafter submit a joint letter setting forth what issues, if

any, they had resolved.  (D.I. 134 (hereafter "Tr.") at 79-82)  On September 27, 2013, the parties

submitted this supplemental letter, indicating that they had resolved only one disputed

issue—SCO's request for additional testimony and/or information regarding data sent to third-

party listing providers.  (D.I. 133 at 1)  Additionally, the parties' supplemental letter set forth

competing proposals from each party as to how the Court should address SCO's remaining

discovery issues.  (*Id*. at 2-6)[1]  Thus, aside from the one resolved issue, all other disputes

identified in the parties' letter briefs are still pending.

## II.    STANDARD OF REVIEW

One of the discovery tools available to litigants is the deposition of a corporation or other

organization, authorized by Rule 30(b)(6).  This rule provides, in relevant part, as follows:

> In its notice or subpoena, a party may name as the deponent a public
> or private corporation, . . . and must describe with reasonable
> particularity the matters for examination. The named organization
> must then designate one or more officers, directors, or managing

---

[1]    These proposals did not address Verizon's request for supplemental Rule 30(b)(6)
testimony.  (*Id*.)

> agents, or designate other persons who consent to testify on its
> behalf; and it may set out the matters on which each person
> designated will testify. . . .  The persons designated must testify
> about information known or reasonably available to the
> organization.

Fed. R. Civ. P. 30(b)(6).  This Court has summarized the law regarding Rule 30(b)(6) depositions

as follows:

> A Rule 30(b)(6) designee is not simply testifying about matters
> within his or her personal knowledge, but rather is speaking for the
> corporation about matters to which the corporation has reasonable
> access. . . .  Therefore, a corollary to the corporation's duty to
> designate a Rule 30(b)(6) witness is that the corporation must
> prepare its designee to be able to give binding answers on its behalf
> . . . [and] perform a reasonable inquiry for information that is
> noticed and reasonably available to it.

*Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust*, Civil Action No. 09-CV-0663 (JCJ),

2011 WL 1636985, at *1 (D. Del. Apr. 29, 2011) (internal quotation marks and citations

omitted).  Thus, a Rule 30(b)(6) witness' "duty of preparation goes beyond matters personally

known to the designee or to matters in which the designee was personally involved, and if

necessary the deponent must use documents, past employees or other resources to obtain

responsive information."  *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007).

Although a Rule 30(b)(6) deponent must be properly prepared pursuant to the Rule's

dictates, he "need not have perfect responses to each question, nor a clairvoyant ability to predict

every single question that may be posed[.]" *Estrada v. Wass*, Civil Action No. 3:10-CV-1560,

2012 WL 1268533, at *2 (M.D. Pa. Apr. 16, 2012); *see also Costa v. Cnty. of Burlington*, 254

F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every

question posed to him does not equate to the fact that defendant did not satisfy its obligation to

3

prepare its 30(b)(6) witness."). And where information is not reasonably available to the

corporation, a Rule 30(b)(6) witness need not answer the question. *Penn Mut. Life Ins.*, 2011

WL 1636985, at *1; *see also Fraser Yachts Florida, Inc. v. Milne*, No. 05-21168-CIV-JORDAN,

2007 WL 1113251, at *2 (S.D. Fla. Apr.13, 2007) (noting that a corporation's "absence of

knowledge is, by itself, a fact that may be relevant to the issues in a given case").

Ultimately, "[i]f 'a deponent fails to answer a question asked under Rule 30,' or provides

an answer that is 'evasive or incomplete,' then a motion to compel the deposition testimony may

be filed." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 214 (E.D. Pa.

2008) (quoting Fed. R. Civ. P. 37(a)(3)(B)(i) & (a)(4)). When such a motion is filed, relief from

the court is particularly appropriate where the deposition testimony, taken as a whole, "reflects an

overall lack of knowledge as to the core areas of inquiry[.]" *Estrada*, 2012 WL 1268533, at *2.

## III.   DISCUSSION

Applying the legal standards set out above, the Court will now address the parties'

arguments in turn.

### A.    Verizon's Request That SCO Supplement Its Rule 30(b)(6) Testimony

Verizon's initial letter brief raises a general objection to the choice and preparation of

SCO's only Rule 30(b)(6) witness, Mr. Jokela, and then specifies seven topics contained in

Verizon's Notice of Rule 30(b)(6) Deposition ("Verizon's Deposition Notice") for which Mr.

Jokela's testimony was purportedly insufficient. (D.I. 124 at 2-4 & ex. I)

At the center of this dispute is SCO's choice of Mr. Jokela as its only Rule 30(b)(6)

witness, despite the fact that another individual—Risto Mäkipää—is the sole listed inventor of

SCO's only asset, the patent-in-suit. (*Id*. at 2 & ex. C) According to Verizon, "Mr. Mäkipää's

knowledge [is] co-extensive with SCO's[.]" (*Id.*) Mr. Jokela, on the other hand, does not have

an engineering or technical background and never worked in the field of digital television, a field

closely aligned with the technology addressed by the patent-in-suit. (*Id.*, ex. E) Verizon

acknowledges that "SCO controls its choice of deponent," but argues that the testimony provided

by Mr. Jokela indicates that "Mr. Mäkipää would be much more likely than Mr. Jokela to provide

complete testimony on behalf of SCO." (*Id.* at 4)

Verizon also makes numerous arguments regarding Mr. Jokela's alleged lack of

preparedness, as it relates to his testimony on the seven specified deposition topics. (*Id.* at 2)

These topics are addressed below, according to the groupings Verizon utilized in its initial letter

brief.

### 1.    U.S. and Foreign Prosecution Histories (Topics 4 & 5 of Verizon's Deposition Notice)

Verizon argues that despite "multiple hours of questioning" about the prosecution of the

patent-in-suit's foreign counterpart, Mr. Jokela was "incapable of providing any meaningful

information about the prosecution histories" of that patent or the patent-in-suit. (D.I. 124 at 3)

SCO responds that Verizon failed to ask Mr. Jokela "substantive questions[,]" and instead

"attempt[ed] to depose Mr. Mäkipää through Mr. Jokela" and subjected Mr. Jokela to "memory

test[s.]" (D.I. 127 at 2-3)

After review of the deposition transcripts provided by the parties, the Court concludes

that Verizon's arguments are persuasive. Mr. Jokela, who testified with the assistance of an

interpreter, made it clear early in his testimony that he does not have a "technical background"

and did not "understand anything about technical stuff." (D.I. 124, ex. E at 45-46) Therefore,

Mr. Jokela explained that as he was "trying to understand [the patent,]" he did so by having at least twenty conversations in which Mr. Mäkipää was a participant, as well as additional conversations in which only he and Mr. Mäkipää "went through the technical parts separately." (*Id.*) As an initial matter, this renders it understandable why Verizon attempted to learn about the foreign prosecution history through questions about what Mr. Mäkipää told Mr. Jokela. (*See* D.I. 127, ex. 2 at 114-125)

As to the substance of Mr. Jokela's testimony regarding the foreign prosecution history (Topic 5), most of the relevant transcripts consist of Verizon's counsel asking basic questions, in an attempt to determine whether Mr. Jokela (who appeared to have little to no independent knowledge on the subject) could recall any of the substance of what Mr. Mäkipää or others shared with him on the topic. (*See* D.I. 124, exs. K & L; D.I. 127, ex. 2 at 115-125) Repeatedly, Mr. Jokela offered little in response—often parrying back questions with questions of his own, with non-sequiturs, or by indicating that he could not recall the content of what he discussed with Mr. Mäkipää and others. (*Id.*)[2] It is clear from review of these (large) portions of the deposition

---

[2]     By way of just one example, during his deposition, Mr. Jokela indicated that he prepared to discuss Topic 5 in significant part by having conversations with Mr. Mäkipää and others. (D.I. 127, ex. 2 at 114-115)  Verizon's counsel followed up by asking Mr. Jokela about what specific things he recalled from these conversations. (*Id.*)  In response, Mr. Jokela testified "I don't remember any part in specific that I would be able to talk about." (*Id.* at 115)  When Verizon's counsel tried again, by asking whether Mr. Jokela could remember any of the "content" of the conversations, Mr. Jokela responded by saying that he could not recall "specific word exchanges" of his discussions with those men. (*Id.* at 116)  This in turn understandably prompted Verizon's counsel to explain that he was not interested in specific word exchanges, but simply wished to learn about "any level of detail" or any "concepts" the men discussed. (*Id.* at 117)  At this point, Mr. Jokela responded again by answering a question not asked—stating that he could not recall "individual word exchanges" or "individual word[s]" from those conversations; eventually, he offered only that Mr. Mäkipää gave him "advice" about the topic. (*Id.* at 118-19)  When Verizon's counsel asked if Mr. Jokela could provide any greater level of specificity than that, Mr. Jokela simply again repeated that he could not remember specific "word

6

transcript that significant lengths of time passed with Verizon's counsel obtaining no substantive

answer to any of his questions.  Because Mr. Jokela repeatedly failed to provide substantive

answers to even the most basic questions on Topic 5, Verizon could not be expected to ask

further questions seeking more detailed answers.[3]

Taken as a whole, the deposition testimony on these topics[4] demonstrates that Mr. Jokela,

despite his preparation, was an inadequate Rule 30(b)(6) witness on Topics 4 and 5.

### 2.    Prior Art and SCO's Awareness of Prior Electronic Program Guides (Topics 13 and 18 of Verizon's Deposition Notice)

Verizon argues that Mr. Jokela's testimony "prevented [it] being from being able to

obtain highly probative testimony" on matters relating to prior art and SCO's awareness of prior

electronic program guides.  (D.I. 124 at 3-4)  On the issue of prior art, Verizon calls attention to

an exchange in which Mr. Jokela was asked whether SCO agreed with the description provided

by the company's patent prosecution counsel of two prior art references.  (D.I. 124 at 2-3 & ex.

G)  After initially responding that the document at issue spoke for itself, Mr. Jokela stated that he

needed to speak with Mr. Mäkipää before answering further.  (*Id.*, ex. G)  Upon returning from a

---

phrases" that Mr. Mäkipää used.  (*Id.* at 120-21)  At no point in this exchange did Mr. Jokela
offer any actual discussion of the content of the foreign prosecution history of the related patent.
The deposition goes on, in this fashion, for pages.

[3]        SCO faults Verizon for at times questioning Mr. Jokela about his memory of
certain conversations while denying him access to a document.  (D.I. 127 at 3; D.I. 124, ex. L)
Yet such efforts to learn about the scope of Mr. Jokela's knowledge makes sense in context,
when earlier in the deposition, providing Mr. Jokela with access to a document resulted in
nothing more than a verbatim recitation of the document's wording.  (*See* D.I. 124, ex. K)

[4]        Verizon notes that little questioning occurred as to Topic 4, as it would have been
only a "formalistic exercise" for Verizon to question Mr. Jokela about the U.S. prosecution
history of the patent after his inability to provide any meaningful information about the foreign
prosecution history of its counterpart.  (*See* Tr. at 60)  The Court agrees with this assessment.

discussion with Mr. Mäkipää, Mr. Jokela said that he had spoken with Mr. Mäkipää at length on the topic, but was not able to recount the contents of the conversation, other than by directing Verizon's counsel to SCO's claim construction chart. (*Id.*, ex. H)  Verizon argues that this testimony amounts to SCO's failure to "provide any information whatsoever on characterizations of two prior art references in the foreign prosecution history[.]" (*Id.* at 3)  SCO responds, *inter alia*, that this line of questioning was improperly "directed at claim construction." (D.I. 127 at 3)

After reviewing the deposition transcript, it is clear that Mr. Jokela's conversation with Mr. Makipaa regarding prior art encompassed more than the claim construction chart, but that Mr. Jokela "was not able to understand" other parts of this discussion. (D.I. 124, ex H at 177; *see also id.* at 179 (". . . Risto spoke a lot about this.  And [the portion about using SCO's claim construction chart to interpret prior art] is what I understood out of it.  And therefore, I am not able to, to understand it completely, as well as Risto Mäkipää does."))

Similarly, in response to a question by Verizon's counsel regarding SCO's awareness of prior electronic program guides, Mr. Jokela responded by saying, "I believe Risto [Mäkipää] would know about this, but I do not know." (D.I. 124 at 4 & ex. M)  SCO again argues that Verizon's questioning on this topic was "an impermissible back-door claim construction inquiry"; it attached additional pages of deposition transcript on the topic of prior art electronic program guides, in support of its claim that Mr. Jokela did provide some response as to SCO's awareness of "methods for generating program listings for EPGs, such as automatically and by hand." (D.I. 127 at 3 & ex. 2 at 230-237)  Yet even in that additional portion of the transcript, Mr. Jokela struggled to provide more than limited, basic responses to Verizon's questions. (D.I. 127, ex. 2 at 233-237)

8

Regardless of what Verizon's motivation was in asking certain of these questions (and whether that motivation has some relation to claim construction), the questions were clearly directed to Topics 13 and 18 (i.e., prior art and/or electronic program guides). And Mr. Jokela's limited answers prevented Verizon from discovering the scope of SCO's knowledge about these topics. Thus, the Court finds that Mr. Jokela was an inadequate Rule 30(b)(6) witness on Topics 13 and 18.

### 3.    Conception, Design, Development, and/or Reduction to Practice (Topics 9 and 10 of Verizon's Deposition Notice)

Verizon argues that SCO "failed to provide adequate testimony" on the topics of conception, design, development, and reduction to practice of the invention, describing Mr. Jokela's knowledge and testimony on these topics as "cursory at best." (D.I. 124 at 4)  In support, Verizon points to:  (1) Mr. Jokela's limited knowledge about the conference where Mr. Mäkipää purportedly conceived of the invention, and (2) Mr. Jokela's inability to identify what literature Mr. Mäkipää drew on prior to beginning his work on the project.  (*Id.*, ex. N & ex. O)

On the first point, SCO responds by attaching deposition testimony of Mr. Mäkipää (given in his individual capacity) in an attempt to demonstrate that Mr. Jokela "answered every question in full and consistent with Mr. Mäkipää's testimony." (D.I. 127 at 4 & ex. 5)  While the testimony of the two men is largely "consistent," comparison of the two deposition transcripts reveals that Mr. Jokela's answers are far from "full," and further underscores Mr. Jokela's inability to provide adequate testimony on this issue. (*Compare* D.I. 124, ex. N at 214-16 (Mr. Jokela states that Mr. Mäkipää conceived of the idea at a 1994 Budapest convention, but is unable to indicate whether this amounted to the "full idea" of the invention, what the subject

matter of the convention was, or how, if at all, the subject matter of the convention related to

conception of the idea), *with* D.I. 127, ex. 5 at 179-82 (Mr. Mäkipää providing more specific

information regarding the subject matter of the 1994 convention and the process through which

he purportedly conceived of the invention while there))

On the second point, Verizon asked: "What literature had Risto Mäkipää reviewed about

EPGs before he went to Kolster in 1997?" (D.I. 124, ex. O at 223)  This question relates to the

broad scope of Topics 9 and 10, and Mr. Jokela did not have an answer.  Moreover, the two-page

excerpt of this portion of the deposition provided by Verizon reveals two other related questions

that also elicited empty responses. (*See id.* ("Q[]: So what were the different methods for

generating program listings in the EPGs that were available before Risto Mäkipää went to

Kolster? . . . A: Unfortunately, I am not able to answer that question clearly. . . . Q: What study

of EPGs did Risto Mäkipää make before he went to Kolster in 1997? . . . A: I am not aware of

any studies that Risto Mäkipää did in accordance to the EPGs before he went to Kolster in

1997."))

Taken as a whole, this section of the deposition testimony demonstrates that Mr. Jokela

was an inadequate Rule 30(b)(6) witness on Topics 9 and 10.

### 4. SCO's Agreements Concerning the Patent-in-Suit and This Litigation (Topic 23 of Verizon's Deposition Notice)

Verizon argues that Mr. Jokela failed to provide adequate testimony on the issue of

SCO's agreements with a Finnish licensing company called Anadeus. (D.I. 124 at 4)  According

to Verizon, it is "entitled to understand the relationship between SCO and Anadeus in order to

ascertain whether [SCO's] assertion of common-interest privilege [over its communications with

10

Anadeus] is appropriate[.]" (*Id.*) Verizon points to Mr. Jokela's testimony in which he states

that SCO has no obligation to share its recovery with Anadeus, and argues that this testimony is

inconsistent with SCO's assertion of the common-interest privilege. (*Id.* at 4 & ex. P) Later,

Verizon argues that SCO should have provided it with a document withheld as "privileged" that

purports to form the basis of the common-interest privilege. (*Id.* at 4 & ex. Q)

What Verizon fails to well explain, however, is how Mr. Jokela's testimony on this topic

demonstrates that he is less than "fully knowledgeable about [SCO's] agreements." (*Id.* at 4)

Indeed, the deposition excerpts provided by SCO demonstrate that Mr. Jokela—a law school

graduate—is more knowledgeable about these agreements than with regard to the technical,

patent-related topics addressed elsewhere in the deposition. (D.I. 127 at 4 & ex. 2 at 244-46,

251-52; *see also* D.I. 124 at 2)  Verizon's quarrel appears to be with the assertion of the

common-interest privilege's applicability, not necessarily with the substance of Mr. Jokela's

testimony on facts relating to that issue. (*See, e.g.*, Tr. at 63-65)  Any privilege dispute, however,

is not now before the Court.

Thus, based upon its review of the record currently before it, the Court finds that Mr.

Jokela was an adequate Rule 30(b)(6) witness on Topic 23.

**B.      SCO's Requests for Additional Discovery**

SCO, for its part, requests that the Court compel Verizon to produce "fully prepared"

Rule 30(b)(6) witnesses regarding various technical features and operations relating to FIOS TV

programing. (D.I. 125 at 1 & ex. A)  On the issue of channel maps, SCO also requests

production of "exemplary exports that show the metadata fields contained in [Verizon's] channel

maps." (*Id.* at 3-4)  Lastly, SCO requests that the Court compel Verizon to produce "documents

sufficient to show the assumptions and calculations used to generate revenue and cost projections for Verizon's Interactive Media Guide[.]" (*Id.* at 2, 5)

As an initial matter, there is a contrast between Verizon's and SCO's approach to the Rule 30(b)(6) deposition process. Verizon provided seven witnesses, many of whom are highly skilled in the technical areas about which SCO sought Rule 30(b)(6) testimony, and whom reportedly were deposed for a total of 44 hours. (*See* D.I. 126 at 1; Tr. at 31) And SCO, despite many hours of depositions and numerous questions directed toward identifying Verizon's most knowledgeable employees on certain topics, cannot identify any individuals other than Verizon's seven Rule 30(b)(6) deponents who are likely to have the outstanding information it seeks. (Tr. at 18; *see, e.g.*, D.I. 125, ex. C at 25-26, 61, 84)

With that in mind, the Court will examine SCO's requests in turn.

1. **Requests for Additional Rule 30(b)(6) Testimony Regarding Multiplexing, Data Received From Broadcasters, Use of Broadcaster Data, Data in Verizon's Transport Stream and Use of the Data in Verizon's Stream (Topics 7b, 7d-g of SCO's Deposition Notice )/James Ho Testimony**

SCO argues that James Ho, Verizon's Rule 30(b)(6) witness on multiplexing, data received from broadcasters, use of broadcaster data, data in Verizon's transport stream and use of the data in Verizon's stream (SCO's Notice of Deposition Pursuant to Rule 30(b)(6) ("SCO's Deposition Notice") topics 7b & 7d-g), was "unable to answer basic questions central to the noticed topics and to the case" and failed to provide "full and detailed" information on topics for which he was Verizon's designated witness. (D.I. 125 at 3 & ex. A)

Upon review of the excerpted transcripts provided by the parties, Mr. Ho appears knowledgeable and prepared on the topics for which he was Verizon's Rule 30(b)(6) witness.

12

(D.I. 125, ex. J; D.I. 126, ex. N)  His answers provide substantive detail to the questions asked, and are non-evasive.  (*Id*.)  Unsurprisingly, given the highly technical nature of the questions, there are some areas where Mr. Ho acknowledged that other individuals at Verizon might be able to provide a response, (*see, e.g.*, D.I. 125, ex. J at 27, 33, 128, 155), and instances when Mr. Ho did not recall a fact or asked to "double-check" before providing an answer, (*id*. at 45, 68).  But failure to provide perfect responses to every single question does not necessarily reflect a lack of preparation or signify that Mr. Ho was an insufficient Rule 30(b)(6) deponent on these topics. *See, e.g., Shapiro v. Am. Credit Union*, Case No. C12-5237-RBL, 2013 U.S. Dist. LEXIS 77019, at *3-6 (W.D. Wash. May 31, 2013); *Chick-Fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *12-13 (S.D. Fla. Nov. 10, 2009); *Costa*, 254 F.R.D. at 189-90.

Thus, while Verizon may possess some additional information sought by SCO at Mr. Ho's deposition, the overall substance of Mr. Ho's testimony requires only that SCO be afforded limited relief on these topics.  After review of the parties' respective proposals, (D.I. 133), Verizon's proposal comes far closer to balancing the competing interests set forth in the law as to what is required of a Rule 30(b)(6) witness.  As a result, the Court will order that Verizon provide binding written responses to the best of its knowledge to no more than 20 questions (without subparts) selected by SCO from the excerpts of Mr. Ho's testimony that SCO cited to the Court, (D.I. 125, ex. J), for which SCO believes in good faith it did not receive complete information through Mr. Ho's testimony. *See* Fed. R. Civ. P. 26(a) ("[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action"); *see also Berwind Prop. Grp. Inc. v. Envtl. Mgmt. Grp., Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (denying plaintiff's request that defendant produce a new Rule 30(b)(6) witness, but requiring defendant to

13

"supplement[] . . . incomplete deposition testimony.").

    **2.**    **SCO's Request for Additional Rule 30(b)(6) Testimony Regarding Channel Maps and Its Request That Verizon Produce Complete Exemplary Exports Showing Metadata Fields in Channel Maps (Topic 7h of SCO's Deposition Notice)/Jeffrey Zager and Shafiq Kassam Testimony**

The current dispute regarding the channel map topic (SCO's Deposition Notice topic 7h) is an outgrowth of the parties' earlier discovery dispute teleconference with the Court on May 8, 2013 ("the May teleconference"). (D.I. 125, ex H) At that time, SCO sought "documents that show how the channel map is created [and what] metadata . . . goes into it." (*Id.* at 22) Most of all, however, SCO sought "the channel map iteslf" because it felt the channel map "forms [the] genesis of what eventually the user sees, which is the interactive metadata." (*Id.* at 9) Indeed, SCO stated at the May teleconference that production of the channel map to SCO "would be very useful [and] could resolve this entire problem." (*Id.* at 11) Verizon responded that it had already provided documents, "show[ing] all the information that goes into the channel map[,] information about the equipment and a detailed step-by-step listing of tasks[,]" and suggested that if SCO had questions about "how the . . . document[s] fit together . . . [SCO] should be taking depositions on this." (*Id.* at 14)

At the May teleconference, the Court ultimately denied SCO's request that Verizon produce additional documents relating to its channel maps, but acknowledged that the decision was "difficult[.]" (*Id.* at 53-55) In doing so, the Court reasoned that SCO had not yet made a "sufficient showing . . . why any additional production of any additional records or data at this stage is warranted." (*Id.* at 54) The Court noted, however, that, "if, through deposition discovery, it becomes clearer to [SCO] and to me that there is some additional category of data or

14

documents relating to the channel map and how it works that haven't been produced and that should be, then [SCO] can make that case to me." (*Id.* at 54) Through its questioning, the Court indicated that deposition testimony (rather than compelling Verizon to produce additional documents or data at that time) would be the better way for SCO to "identify . . . subcategories of documents that may be further necessary" because "the deposition process" might "show how the channel map works[.]" (*Id.* at 24)

To address the issue of channel maps at Rule 30(b)(6) depositions (which occurred after the May teleconference), Verizon first designated Shafiq Kassam, the chief architect of Verizon's Interactive Media Guide. (D.I. 126 at 1-3 & n.4) After Mr. Kassam's testimony, and in response to SCO's allegation that Mr. Kassam was "inadequate[ly] prepare[d,]" Verizon offered to provide additional Rule 30(b)(6) testimony on the topic from Jeffrey Zager and "[c]opies of exemplary exports of the channel map[.]" (D.I. 125, ex. B at ECF pp. 38-49; Tr. at 8) With regard to the testimony of Mr. Zager, the manager of Verizon's group responsible for the equipment in which the channel map is initially created, SCO asserts that he was also "ill prepared[.]" (D.I. 125 at 2-3; *see also* D.I. 126 at 1-2) SCO argues that Mr. Zager presented testimony that was internally inconsistent and inconsistent with documents produced by Verizon with respect to the data fields found in channel maps. (D.I. 125 at 3) As to the exemplary exports of channel maps, Verizon produced only "reports" of the channel maps, not the "complete" exemplary exports showing all associated metadata sought by SCO. (D.I. 125 at 1; D.I. 126 at 2-3)

The Court will focus particularly on Mr. Zager's testimony, as it is not disputed that Mr. Zager was offered as a witness to supplement Verizon's testimony as to channel maps after Mr.

Kassam's deposition. (D.I. 125 at 3; D.I. 126 at 3 n.7)  A review of that testimony indicates that Mr. Zager is generally knowledgeable on the topic of channel maps. (*See* D.I. 125, ex. L; D.I. 126, ex. H)  SCO focuses particularly, however, on purported inconsistencies in Mr. Zager's testimony regarding the data fields in channel maps created by Verizon.  A review of the testimony at issue indicates that Mr. Zager's testimony here changed through the deposition, as he supplemented that testimony on different occasions (at times by conferring with a colleague during a break). (D.I. 125, ex. L at 17, 138-140; D.I. 126, ex. H at 100-04, 124-130)  To some degree, this supplementation can be seen as the kind of effort that a thoughtful deponent would be expected to make during a deposition, as part of his duty to provide responsive information.

On the other hand, these differing answers also underscore SCO's concern about consistency and completeness on this topic, especially because the documentary evidence on the issue of channel maps is admittedly limited.  Further, SCO points to additional instances where Mr. Zager was unable to answer questions about the channel maps that might be answered by reference to the exemplary channel map exports SCO seeks. (*See, e.g.*, D.I. 125, ex. L at 110-11, 135 (Mr. Zager stating he is "not sure" whether a certain data field is "standard or hidden"); *id.* at 91 (Mr. Zager stating he is "not sure" whether "the field line-up name [is] included in the channel map"))  Thus, through its letter brief, SCO has bolstered its case that "additional production of [] records or data at this stage is warranted[.]" (*See* D.I. 125, ex. H at 54)

To address the channel maps issue, SCO seeks a "properly prepared" witness on the topic and production of certain channel maps set out in the parties' September 27, 2013 supplemental letter. (D.I. 125 at 3-4; D.I. 133 at 5)  SCO's preference, however, is clear—it believes there is "no substitute for any information concerning the channel map[s] other than the maps

16

themselves." (D.I. 125 at 4 n.6)  Verizon admits it may be possible for it to produce a

"complete" version of the channel maps at issue, but doing so would require the company to

"determine a set of code commands to output an entire map[.]"  (D.I. 126 at 2-3)  And though

Verizon argues it should not be required to provide SCO with "custom documents[,]" (*id.* at 3), it

has not taken the position that exporting the channel maps would be unduly burdensome pursuant

to Rule 26, (*see* D.I. 125, ex. H at 20-21).[5]

    Finding that SCO has made a sufficient showing that its requested material is relevant and

that Verizon failed to show why such discovery should not be permitted under Fed. R. Civ. P.

26(b)(2)(C), the Court orders that Verizon produce exemplary exports of channel map data as set

out in SCO's proposal in the parties' supplemental letter.  (D.I. 133 at 5)  Otherwise, the Court is

not convinced that further Rule 30(b)(6) testimony is warranted at this time, in light of the fact

that (1) SCO's focus on the deficiency of Mr. Zager's testimony regarded the content of channel

maps, which may be addressed by the provision of these exemplary exports; and (2) Mr. Zager

was, in general, a knowledgeable witness on SCO's Deposition Notice topic 7h.

---

[5]    Though it did not make the argument at the May teleconference, Verizon now states it would be more convenient and less burdensome for SCO to obtain the complete channel maps from vendors Motorola and/or Cisco.  (D.I. 126 at 3-4)  In support, Verizon cites *In re Rembrandt Techs.*, Civil Action No. 09-cv-00691-WDM-KLM, 2009 WL 1258761, at *13 (D. Colo. May 4, 2009), for the proposition that "information regarding vendor equipment should [be] obtained from [the] vendor[.]"  (D.I. 126 at 4)  *In re Rembrandt Techs.*, however, is clearly distinguishable from the situation here.  In that case, a non-party in a patent dispute sought to quash a subpoena it received to produce documents.  *In re Rembrandt Techs.*, 2009 WL 1258761, at *1.  That non-party argued that the "vendor"—a party to the patent litigation—was the proper entity from whom discovery should be sought.  *Id.* at *13.  That Court agreed, reasoning that the requesting party "made no showing that [the non-party] has information which the parties would not have[.]"  *Id.*  Here, Verizon's argument is just the opposite—it does not deny that it has the capability of obtaining the materials SCO seeks, but nevertheless argues that non-parties Motorola and/or Cisco are the better subject of SCO's request.  (D.I. 126 at 2-4)

3.    **Documents Showing the Financial Calculations and Assumptions Relating to Verizon's Interactive Media Guide's Revenue and Cost Projections**

In April, the parties agreed that Verizon's production of its FiOS profitability reports would satisfy its obligation to produce "financial documents." (D.I. 126 at 4 & ex. U at 2-3; Tr. at 47-48) Nevertheless, SCO now seeks a court order compelling Verizon "to produce documents sufficient to show the assumptions and calculations used to generate revenue and cost projections related to Verizon's interactive media guide[.]" (D.I. 125 at 5) SCO acknowledges that were such documents covered by the prior agreement, it would not be entitled to them. (Tr. at 49) However, it argues that the documents do not fall into the "financial" realm, because the cost projections addressed by SCO's request "appear in a business planning document" and also because a Verizon witness testified that these projections were not created by Verizon's financial department and were subject only to "'high-level'" review by that department. (D.I. 125 at 5) Verizon responds that the documents sought by SCO are "financial," and therefore discovery of them is "barred by the parties' agreement[.]" (D.I. 126 at 4)

In the parties' supplemental letter, SCO proposed to further limit its request to only the "assumptions" (rather than the calculations or "financial models") underlying Verizon's revenue and cost saving calculations. (D.I. 133 at 5-6; D.I. 125, ex. M at 37) Even with this limitation, SCO has failed to convince the Court that documents regarding Verizon's projections as to revenue and cost figures for the interactive media guide are not "financial" documents subject to the parties' agreement. (*Cf.* D.I. 126, ex. U at 2-3 (SCO letter, memorializing parties' agreement, and explaining that a "FiOS Firm Profitability Analysis" was a financial, not a marketing

document)) The Court therefore denies SCO's request in its entirety.[6] *See In re High Fructose Corn Syrup Antitrust Litig.*, Nos. MDL 1087, 95-1477, 2000 WL 33180835, at *2 (C.D. Ill. July 19, 2000) (denying plaintiff's request for discovery because it sought discovery outside the bounds of a period specified in a prior agreement with defendants).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Verizon's motion for requested discovery is GRANTED-IN-PART, and SCO is ordered to produce a new Rule 30(b)(6) witness on Verizon Deposition Notice topics 4, 5, 9, 10, 13 and 18. *See Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647(CBA)(MDG), 2012 WL 3536987, at *8-10 (E.D.N.Y. Aug. 13, 2012) (ordering party to produce a new Rule 30(b)(6) witness where it was "unlikely" that the party's original Rule 30(b)(6) witness "could provide adequate responses" because the "technical nature of [the] topics" demanded a deponent with "technical training or experience"). The Court declines to order that a particular Rule 30(b)(6) witness be designated by SCO, but notes that whoever is produced shall be knowledgeable regarding these topics. Failure to produce such a witness may result in a situation where sanctions against SCO would be warranted. *See id.* at *10. Additionally, SCO's motion for requested discovery is GRANTED-IN-PART, in the manner set forth above. The parties are ORDERED to meet and confer in an attempt to agree upon a schedule for timely compliance with their obligations under this Memorandum Order.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly

---

[6]       The Court declines to rule at this time as to what relief, if any, SCO would be entitled if Verizon later relied on evidence that "call[s] into question" these projections or the cited testimony regarding the projections. (Tr. at 52)

proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version

shall be submitted no later than **October 22, 2013** for review by the Court, along with a

submission demonstrating why there is good cause for the redactions and why disclosure of the

redacted material would "work a clearly defined and serious injury to the party seeking"

redaction. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation

marks and citation omitted). The Court will subsequently issue a publicly-available version of its

Memorandum Order.


Dated:  October 15, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE